631 P.2d 1099

**STATE of Arizona, Appellee,**

v.

**Lawrence James MUNSON, Appellant.**

**No. 2 CA–CR 2218.**

Court of Appeals of Arizona, Division 2.

May 29, 1981.

Rehearing Denied July 2, 1981.

Review Denied July 21, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, David R. Cole, Phoenix, and Bruce M. Ferg, Asst. Attys. Gen., Tucson, for appellee.

Richard S. Oseran, Pima County Public Defender by Allen G. Minker, Asst. Public Defender, Tucson, for appellant.

OPINION

BIRDSALL, Judge.

The appellant was convicted of aggravated assault on one victim, a class 3 felony of

a dangerous nature, and sentenced to 6 years in prison, and aggravated assault on another victim, a class 6 felony, non-dangerous, for which he was sentenced to a concurrent term of 1 year imprisonment.

The sole issue on appeal is whether appellant was denied a trial by an impartial jury because the trial court denied his challenge of two veniremen for cause.

■ Appellee argues that even if the trial court should have excused the two veniremen for cause, appellant has failed to show the error was prejudicial by showing that the jury selected was not, in fact, fair and impartial. We disagree. Appellant was entitled to a venire panel of 20 qualified jurors from which he could exercise his six peremptory challenges[1] and appellant need not establish prejudice if the trial court's denial was error. *See Wasko v. Frankal,* 116 Ariz. 288, 569 P.2d 230 (1977).

As authority for this argument, appellee cites *State v. Evans,* 125 Ariz. 140, 608 P.2d 77 (1980) which is inapposite. In that criminal case the trial court had qualified 14 trial jurors, one of whom would be selected as an alternate juror prior to deliberations. During the trial one of the 14 jurors was discovered crying in the hall and asked to be excused because she found it very disturbing to have so much control over the defendant's welfare and future. The trial court excused the juror but 13 jurors remained from which the final 12 were taken. Division One of this court held that removing this juror, after evidence was presented, where there were sufficient jurors to enable the trial to continue, was within the sound discretion of the trial court and was not error. The court states that a defendant's right to a fair and impartial jury does not entitle him to be tried by any particular jury and therefore unless the record shows that there was not a fair and impartial jury, no error had been committed. The case is not authority for the argument made here by the appellee.

Appellant, a black man, had been living with one of the victims, a white woman, for a few months prior to the assaults. On the date in question, the two had an argument over their relationship. The woman left the appellant's apartment and was picked up by her grandmother, the other victim, in an automobile. The appellant chased after them, rammed their car and assaulted them. Because of his race and his relationship with the victim, the court during voir dire asked the jury several questions aimed at discovering racial prejudice. Initially, the court inquired of the venire as follows:

"The evidence may show in the case, Ladies and Gentlemen, and probably will show, that the defendant was dating and enjoyed a relationship with a white girl, who was the victim—who is the victim of the alleged crime. May I inquire, and please be very honest about this, whether that fact would prevent any of you from being fair in this case where the charge is that the defendant assaulted the victim, who is a white girl, the fact that they were dating and enjoyed a relationship of some sort? Please be honest. This is a very critical area here. All right, than may I assume by your lack of response that the fact that a white girl was dating a black man would not interfere with any of your—any of you being absolutely impartial and fair if chosen as a juror in this case?"

The court then asked the panel if any of them had a feeling that white girls should not date black men. Two jurors responded affirmatively.

"MR. BOYER: I wouldn't feel favorable to that, really.

THE COURT: All right. Having this feeling would it prohibit your being fair where a black man has been charged with an assault upon a white girl?

MR. BOYER: I wouldn't hope so.

THE COURT: Is there any doubt in your mind that you would—well, let me ask you this: Would you conscientiously try to not let whatever feelings you may

---

1. Since the possible penalty was not 30 years or more, a jury of 8 was required. A.R.S. § 21–102(B). Each party had 6 strikes. Rule 18.4(c), 17 A.R.S. Rules of Criminal Procedure.

have about this interfere with your decision?

MR. BOYER: Yes, I could.

THE COURT: All right. Anybody else want to comment on this? Yes, Ma'am, Mrs. Hinkle?

MRS. HINKLE: Yes. I was raised in the south, sir, and I mean I don't—don't get me wrong when I say it, the black has just as much privileges as us whites, but I was raised that they are just not supposed to connect period, and when my son was growing up I told him there was one thing that I would object to and that would be him to integrate in marriage and he says: Mother, I won't do it. That's the way I feel.

THE COURT: Okay. Well, believe you me, we do appreciate your being— saying this openly. The key question is again whether this feeling would prevent you being fair in a case of this nature?

MRS. HINKLE: It really wouldn't be any, but I just don't think they should integrate.

THE COURT: You can set aside that feeling and decide the guilt or innocence of the defendant based solely on—

MRS. HINKLE: On the evidence.

THE COURT: On the evidence and the law that the Court gives you and the arguments of counsel?

MRS. HINKLE: Yeah, I can do that, but I mean I'm just letting you know how I was raised."

Later, the court also asked whether the panel had any feelings about a black person living next door to them. The same two veniremen responded.

"MR. BOYER: Well, I would take the attitude of which I wouldn't like it but I wouldn't do anything about it."

MRS. HINKLE: I believe the same thing. I wouldn't sell my house to get rid of it."

Appellant argues that these responses evidenced a racial bias and that these two veniremen should have been excused for cause. He argues that since his challenges for cause were denied, he was denied his right to an impartial jury. He contends that he was wrongly forced to exercise two of his peremptory challenges on these veniremen rather than two others who served on the jury. We do not agree.

A juror may be excused for cause when there is reasonable ground for the court to believe that he cannot render a fair and impartial verdict. Rule 18.4(b), 17 A.R.S. Rules of Criminal Procedure. In addition, A.R.S. § 21–211 provides, in part, that persons biased or prejudiced, in favor of, or against, either of the parties shall be disqualified.

The determination of whether to sustain or deny a challenge for cause is within the sound discretion of the trial court and its discretion will not be disturbed on appeal absent a clear showing that it abused its discretion. *See State v. Reinhold*, 123 Ariz. 50, 597 P.2d 532 (1979). To establish abuse of discretion, appellant must show that the jury has been biased or that the selection process was discriminatory. *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978).

The veniremen's response cited by appellant indicate that they had certain opinions about inter-racial relationships. However, such opinions alone will not disqualify them as jurors unless there is evidence that he or she is unable to set aside the opinion in evaluating the evidence at trial. *See State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023 (1980). The trial court decides during voir dire whether a juror's opinion is fixed and will influence his decision. The determination depends in large part upon the observation of the prospective juror's demeanor and the tenor of his answers. *State v. Clayton*, 109 Ariz. 587, 514 P.2d 720 (1973).

These veniremen indicated that their opinions would not interfere or affect their decision. Appellant contends that their responses were indefinite or equivocal as to their ability to set aside these opinions. We disagree. People generally do not speak in absolutes and the responses cited here are not equivocations. *Cf. State v. Turrentine*, 122 Ariz. 39, 592 P.2d 1305 (App.1979) (deni-

al of a challenge for cause was upheld when juror said he believed he could set aside his personal feelings and follow the court's instructions but did not specifically state that he would follow the court's instructions).

Furthermore, the court's voir dire concerning racial bias, including the excerpts cited here and taken as a whole, justifies the court's denial of the challenge for racial bias. *See State v. Thomas*, 78 Ariz. 52, 275 P.2d 408 (1954). No one indicated that the fact that appellant and the victim were dating and enjoyed a relationship would interfere with his or her ability to be fair and impartial. The court asked the panel if anyone would be more inclined to find a black person guilty of a crime than a white person or whether the fact that the defendant was black made anyone think that they couldn't be fair. No veniremen responded affirmatively. No veniremen thought blacks commit a disproportionate amount of crime.

Nothing in the voir dire of the veniremen indicates that the two challenged veniremen or any others should have been excused for cause. We hold that the trial court did not abuse its discretion.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.