137 Ariz. 550 (1983)
672 P.2d 480
STATE of Arizona, Appellee,
v.
Earl Sidney DAVIS, Appellant.
No. 1 CA-CR 5585.
Court of Appeals of Arizona, Division 1, Department C.
March 15, 1983.
Rehearing Denied October 5, 1983.
Review Denied November 15, 1983.
*551 Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., *552 Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.
Ross P. Lee, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, for appellant.
OPINION
BROOKS, Judge.
The defendant brings this appeal from his conviction of one count of molestation of a child, a class two felony,[1] following a trial by jury. He raises four issues for our consideration: (1) Whether the trial court abused its discretion in denying motions to strike the entire jury panel and the defendant's motions to strike two prospective jurors for cause; (2) Whether the trial court erred in reconsidering its previous ruling on defendant's motion in limine to preclude the admission of defendant's prior convictions, and in allowing the admission of one prior conviction for impeachment purposes; (3) Whether the trial court erred in allowing the state to amend the information to allege prior convictions for the purpose of enhancing punishment; (4) Whether the trial court erred in refusing to give defendant's requested instructions on sexual abuse and contributing to the delinquency of a minor as lesser included offenses. We affirm.
FACTS
The facts of this case involve an incident which occurred August 20, 1980, when the defendant allegedly touched the genitals of the then four year old female victim. The evidence introduced at trial revealed that the victim went to the home of the mother of defendant on August 20, 1980. Apparently the mother of the defendant was an elderly lady, and the children in the neighborhood went to her home frequently to visit. On the morning of August 20, 1980, the victim, her eight year old sister, and another young girl visited the home of Mrs. Davis. The defendant was there and was watching television with the young girls when a commercial for the movie "10" came on. The little girls began to giggle at the sight of the skimpily clad actress in the commercial, and the defendant asked them if they would like to see some "nasty" pictures which he could bring over from another apartment. Two of the girls responded in the negative, but the victim initially responded "yes", and then quickly changed her response to "no". Sometime that morning, the two older girls left the home of defendant's mother, but the victim remained and at approximately noon, she called her mother to ask permission to stay and have pancakes with Mrs. Davis and the defendant. The victim's mother granted her permission to stay, and at approximately 2:00 p.m., the victim returned home, according to her mother, unusually calm and wide-eyed, telling her mother that the defendant had told her a secret she was not supposed to tell. The mother persuaded the child to tell her what had happened.
The victim told her mother that she was alone in the kitchen with the defendant when he asked her to get his underwear. He removed his jeans in front of her in the kitchen, and then put on his underwear. He lifted the victim onto the kitchen counter and used both hands to touch her vagina. In the victim's words, "he opened where I went to the bathroom." After that, he told her not to tell anyone, and she returned home.
By information filed September 8, 1980, the defendant was charged with the crime of molestation of child. On February 25, 1981, the state filed an addendum to the information alleging a prior conviction. The defendant filed a motion to strike the addendum on the grounds that it was untimely filed. The trial court denied the motion on March 25, 1981. Also prior to trial, the defendant filed a motion in limine requesting the court to preclude the state from impeaching the defendant with the prior convictions. The motion was argued prior to the first trial in this cause, and the court granted defendant's motion. A mistrial was declared at the conclusion of the *553 first trial because the jury was unable to reach a verdict. The case was set for a new trial before another jury.
On the day the second trial was to begin, the state requested the court to reconsider its previous ruling precluding the use of defendant's prior convictions for impeachment purposes. Following argument, the trial court determined that the probative value of the admission of at least one prior conviction outweighed its prejudicial effect and thus granted the state's motion to allow impeachment of the defendant with a 1980 conviction for theft but precluded impeachment with a 1975 conviction for burglary.
During the selection of the jury, nine jurors were stricken for cause by the trial court. The court struck some of the jurors due to scheduling conflicts and others because of their stated inability to be fair and impartial. During voir dire, one of the prospective jurors, Mr. Timewell, told the court that he was related to an attorney who was or had been a prosecutor, and that he, Mr. Timewell, personally had strong feelings about the type of crime with which the defendant was charged in this case. During a recess, Mr. Timewell approached the defense counsel and the prosecutor and indicated that he wanted to talk to them about a matter which was not brought up during voir dire. Following the recess the court, at the request of defense counsel, held an in chambers conference with Mr. Timewell where both counsel were allowed to question him. The defendant moved to strike Timewell from the jury for cause, and the trial court denied the motion. Subsequently, the defendant used a preemptory challenge to strike Mr. Timewell.
Another member of the jury venire, Ms. Dorn, told the court during voir dire that she had been married to a deputy county attorney for 13 years, and because of what she had learned about trial "techniques" she did not believe she could be a fair and impartial juror. The trial court dismissed Dorn for cause.
Venireman Grammer, a minister, told the court that during his 21 years of being a pastor, he had dealt with a number of cases involving child molesting, and concluded that he would not be a fair and impartial juror. The court excused Grammer for cause. Venireman Bartel expressed a similar reservation to that of Grammer, and the court excused him for cause also.
At one point during voir dire, the court made the following statement with regard to Dorn's and Grammer's comments:
Now, Ladies and Gentlemen, Miss Dorn made some statements. I don't quite know what she intended by them, but I do want to see if any of you happen to feel the same way that Miss Dorn felt about the court system. And I am not sure just exactly which way she felt. But if you have any strong feelings for or against the court system, for or against our system of justice, for or against prosecutors or defense attorneys, I would like to hear from you at this point.
One person responded to the question indicating that "sometimes I am for the county attorneys and sometimes I am for the public defender.... I see both sides." The trial court pointed out that this was a good trait for a juror to have. The trial judge was apparently concerned that the comments by the prospective jurors Timewell, Dorn, and Grammer might have prejudiced the entire panel and he proceeded to question the jury as follows:
One of the concerns that I have quite candidly  and it is something that we were just discussing  is whether that any of you feel that your own opinions have been tainted or colored by some of the comments that some of your other potential fellow jurors have made.
Mr. Grammer in the back row, who was excused previously, apparently is a pastor and has some very strong feelings  so strong in fact about this kind of offense that he felt he could not sit as a fair and impartial juror. The question before you is whether any of you think that because of those kinds of comments that he made and some of our other potential jurors have made that you can no longer decide this case based exclusively on the evidence that you hear in the court room. If *554 so, please be candid and honest enough to tell me.
In response to the court's comment, a potential juror, Ms. Dorris, indicated that she believed the comments of the other jurors had so affected her as to make her unable to sit as a fair juror and she was excused for cause.
Another venireman, Feusahrens, a police assistant, was questioned in voir dire concerning his employment. He stated that he attended four weeks at the police academy, had been a civilian employee of the Phoenix Police Department for seven years, and spends 40 hours per week writing police departmental reports. He also indicated that he would not tend to believe the child of a police officer (the victim in this case) any more readily than he would believe the testimony of an ordinary citizen.
The defendant moved to strike the entire jury panel on the grounds that they had been prejudiced by the remarks of Timewell, Dorn, Bartel and Grammer. The motion was denied. The defendant also moved to strike jurors Timewell and Feusahrens for cause, and those motions were denied.
SELECTION OF THE JURY
Failure to Strike the Panel
For his first issue on appeal, the defendant contends that the trial court erred in denying his motion to strike the jury panel, because the exchanges between the court and the veniremen Timewell, Dorn, Bartel and Grammer fatally prejudiced the entire panel. In order to properly address the merits of defendant's contention, it is necessary to specifically set out those portions of the record.
The first comments which the defendant alleges tainted the jury occurred while the trial court was questioning Timewell, who had indicated that he knew a prosecutor, that the prosecutor was related to him, and that they socialized frequently. The court then questioned Timewell as follows:
THE COURT: Do you think that because you know that person you would be prejudiced in favor of the prosecution and likely to be more sympathetic to that side of the case?
VENIREMAN TIMEWELL: For the prosecution and against the defendant, right?
THE COURT: Yes.
VENIREMAN TIMEWELL: Possibly. I don't know.
THE COURT: Well, let me put the question to you in a different way. Do you think if you were selected as a juror in this case that you could reach a verdict based exclusively on the evidence that you hear in the 
VENIREMAN TIMEWELL: Well, it might be doubtful. I don't know. If all circumstances  the type of case that its on, I might be prejudiced anyhow since I have a younger daughter.
THE COURT: Okay.
VENIREMAN TIMEWELL: Just an off the cuff.
The court continued questioning Timewell about his relationship with a prosecutor, and concluded the exchange as follows:
THE COURT [sic]: Are you telling me that you could not decide this case based exclusively on what you hear in the courtroom, the evidence that comes from the witness chair right here?
VENIREMAN TIMEWELL: Well, according to what we're supposed to do, that's what we're supposed to do.
THE COURT: That's right. And I want to know if you can do it.
VENIREMAN TIMEWELL: Yes, I could.
THE COURT: You think you could?
VENIREMAN TIMEWELL: Probably.
The court ceased questioning Timewell at this point. However, another exchange between the court and Timewell occurred when the court questioned the jury concerning whether they had ever been in a situation where a crime such as the one with which the defendant in this case was charged had been committed. Timewell responded as follows:
VENIREMAN TIMEWELL: I have got my own, you know  well like I say, I *555 have got a daughter. And I feel very strongly, you know, against that happening.
THE COURT: Well, I suspect that 
VENIREMAN TIMEWELL: I mean if there was  of course 
THE COURT: The question is not whether you would be offended if one of your own children had this sort of thing happen to them. The question is  this is for all of you  whether you can decide this case based exclusively on what you hear in the courtroom without imagining what it would be like if this happened to your own children?
VENIREMAN TIMEWELL: That would be the easy part.
The hard part is if I gave a decision that ended up  you know, finding out information afterwards  because I know in some cases some things are not brought up.
THE COURT: You won't. That won't happen.
VENIREMAN TIMEWELL: Because I would hate to give a decision and say innocent or  well, particularly of innocence and then find out the guy was really guilty.
THE COURT: Well I don't think you need to worry about that.
The question again is whether you can decide the case based on what you hear from the witness stand when witnesses testify. And if you think you can do that, that's what I want to hear. If you don't think you can do it, I want to hear that too.
VENIREMAN TIMEWELL: Well, the whole point is, like I said, sometimes things are not brought out that should be brought out.
THE COURT: Okay we've talked about that. Everything that 
VENIREMAN TIMEWELL: I know I'm getting around the question and I am not answering you.
THE COURT: Everything that is admissible will be admitted here in Court. And you will be asked to decide this case based on the evidence that you have.
VENIREMAN TIMEWELL: The previous information about that particular person will be admitted?
THE COURT: I am in no position to answer that question at this point.
VENIREMAN TIMEWELL: I know in some cases previous offenses and so forth are not allowed in a court case, and this to me is a situation that shows a pattern. Which in turn if the court cases are not allowed, then, it would give me a very bad feeling if I had let somebody off who did not deserve to be off.
THE COURT: Well there are some specific rules of evidence that handle that kind of problem, and it is fortunately not something that you have to worry about. I have a whole book of rules that I have to apply to answer questions like that. And you should be thankful you don't have to worry about it.
You would  if you are on the jury you will hear what you are entitled to hear in the case and the decision will be mine.
VENIREMAN TIMEWELL: Okay.
THE COURT: Fortunately or unfortunately.
Defendant asserts that the court's responses to Timewell tended to confirm for the jury that the defendant might have an undisclosed criminal record which would show a pattern of child molesting.
Defendant also complains that the comments of Ms. Dorn fatally infected the jury. Dorn indicated that she had been married to a county attorney for 13 years and that she would have a lot of prejudice "for the court system after having been around and seeing the different techniques, et cetera, that are used." The court did not excuse Dorn at that point, but questioned the jury further concerning whether they had law enforcement experience or whether they had friends or relatives who had law enforcement experience. The court asked whether any of the jurors believed they could not keep an open mind because of such employment history. Ms. Dorn raised her hand at that point and the following exchange occurred:

*556 THE COURT: All right. You do not think that you could evaluate the testimony only after you had heard it?
MS. DORN: That's right.
THE COURT: All right. You have some predispositions in favor of law enforcement officials?
MS. DORN: And I think I would be looking at the techniques involved, et cetera, as opposed to the case itself.
THE COURT: Okay. Thank you for your candor. I am going to excuse you.
The defendant contends on appeal that both Dorn and Timewell had relationships with attorneys which resulted in their having special knowledge of court proceedings. The defendant contends that Dorn's special knowledge intimated to the jury that there are "techniques" which are unknown to the average juror. The defendant also asserts because Dorn indicated before the jury that she was prejudiced in favor of the prosecution, she implied to the jury that these "techniques" are used on behalf of the defense and that the implication prejudiced the jury against the defendant.
The defendant asserts that the prejudicial impact of Dorn's and Timewell's comments was aggravated by the comment of Venireman Grammer. He stated:
Another thing I would like to express is that after 21 years of pastoral work and counseling with these kind of cases I don't think I could be very open minded. I have had quite a number of these cases throughout the years in the church that I have had to counsel with the parents. And really I am  I am just not openminded on this to be real honest with you.
The court excused Grammer.
The next exchange which defendant contends added to the prejudicial effect of the previous exchanges occurred between the court and venireman Bartel as follows:
VENIREMAN BARTEL: Your Honor, you asked the question of all of us how we feel about this case regarding the child molestor or alleged child molestor. Is it premature to respond to that question at this point in time?
THE COURT: I would be happy to hear your response to that. It must be of some concern to you.
VENIREMAN BARTEL: It is and always has been. And as I talked to my wife last night, I said, "I hope I don't draw a case where there is children involved," and sure enough it was.
I feel very uncomfortable with it. I am afraid I would be very biased and prejudiced.
THE COURT: Well, let me follow up on your statement there. In the first place in our system of justice, as you probably know, a defendant who is charged with a crime is presumed innocent until he is proven otherwise in a court of law. As Mr. Davis is here before you, he is necessarily presumed to be innocent.
Do you feel that because he has been charged with this crime that he is probably guilty of it?
VENIREMAN BARTEL: No, sir, I don't. But I am afraid I couldn't be too objective even with the testimonies that will come forth. I am not too sure how I would react to that situation. I would try to be open minded and honest with my own feelings, but I do have a very definite bias against this type of situation regardless of innocent or guilty.
THE COURT: I understand that.
Do you think that you could try to evaluate this case based exclusively on the evidence that you hear from the witness stand in this case?
VENIREMAN BARTEL: I would hope so. And I would have to say too at this point say yes.
THE COURT: That's all we can ask.
VENIREMAN BARTEL: But I do have a feeling inside that bothers me about the particular situation.
Mr. Bartel was ultimately excused from the panel for cause.
The defendant contends that Timewell's speculation about a prior record showing a "pattern", the discussion by Dorn about "techniques" and her bias in favor of law enforcement, the comments of Grammer, and the comments of Bartel produced a *557 cumulative effect which tainted the jury and prejudiced it against the defendant. We disagree.
Rule 18.4(a), Rules of Criminal Procedure, 17 A.R.S., provides that either party may challenge the entire jury panel on the ground that "in its selection there has been a material departure from the requirements of law." While an accused has a constitutional right to be tried by a fair and impartial jury, he is not entitled to be tried by any one particular jury. State v. Greenawalt, 128 Ariz. 150, 624 P.2d 828 (1981). The party who challenges the jury panel has the burden of showing that the panel selection was the result of a "material departure from the requirements of law." Id. In doing so, the party challenging the panel must show either that the jury was unlawfully empaneled or that the jurors could not be fair and impartial. Id. In this case, the defendant has the burden of showing that other jurors were prejudiced by the comments of Timewell, Dorn, Grammer, and Bartel. State v. Rose, 121 Ariz. 131, 589 P.2d 5 (1978). The extent of voir dire is left to the discretion of the trial court, and the defendant must make a clear showing that the trial court has abused its discretion before this court will overrule the trial judge's determination. Id.
The record in this case reveals that the trial court specifically questioned the jury on two occasions during voir dire concerning any possible prejudicial impact emanating from the statements of their fellow potential jurors. The one party who responded to the trial court's inquiry was excused for cause. In this case where the potential jurors expressed themselves often and freely during voir dire, it is important to note that no other person on the panel responded to the court's inquiry. Defendant asks this court to indulge in an assumption, therefore, that the panel was tainted. We decline to do so. State v. Duke, 110 Ariz. 320, 518 P.2d 570 (1974). The defendant has failed to meet his burden of showing that the panel was prejudiced by the remarks of Timewell, Dorn, Grammer and Bartel.
INDIVIDUAL JURORS
The defendant moved during voir dire to strike Timewell and Feusahrens from the panel for cause. The trial court denied his motions, and he contends herein that the trial court's ruling was in error.
We turn first to the question of Timewell's ability to serve as a fair and impartial juror. In addition to his exchanges with the court before the jury panel, Timewell appeared before the trial judge and counsel in chambers. During this discussion, Timewell indicated that he would very strongly prefer not to serve on the jury in a child molesting case. He again asked if the jury would hear about the defendant's prior record. After being questioned by the prosecutor, the defense attorney, and the court, Timewell assured the court that he could decide the case solely on the evidence produced in court:
THE COURT: Do you think it would be impossible for you to base your verdict on the evidence that you hear in the courtroom?
Do you think you necessarily have to go to your own personal opinions, prejudices, and sympathies to reach a verdict?
VENIREMAN TIMEWELL: Well, I can always be completely objective instead of subjective if I have to be.
THE COURT: That's what's being asked of you. Do you think you can do that?
VENIREMAN TIMEWELL: I could be, yes.
THE COURT: That's what's being asked of you. Nobody is saying that it is easy. But the question is whether you can put aside your sympathies and prejudices and strong feelings and reach a verdict based upon what you hear in the courtroom.
VENIREMAN TIMEWELL: Right.
THE COURT: That is the question.
VENIREMAN TIMEWELL: I could do that.
Timewell also assured defense counsel that he would work towards the goal of sitting on the case with the same intellectual honesty *558 that he would expect from a juror who might sit in judgment of him.
The defendant asserts, nevertheless, that despite Timewell's assurances that he could put aside his personal distaste for a child molesting case and put aside his concern about whether the defendant had a prior record, it is obvious and should have been obvious to the trial court, that the prospective juror could not be impartial. Thus, the defendant concludes that the trial court abused its discretion in refusing to strike Timewell for cause.
Defendant relies on State v. Rodriguez, 131 Ariz. 400, 641 P.2d 888 (App. 1981), as authority for his claim that the trial court's failure to strike Timewell constitutes reversible error. We find Rodriguez to be distinguishable from the facts of this case. In that case, where the defendant was charged with burglary, and a potential juror had recently been burglarized, the juror indicated to the trial court that she was still upset about the recent burglary and that she hoped she could make a fair decision. The dialogue with the court concluded by her stating that she would "try and be fair" but that the burglary "would still be in the back of my mind." 131 Ariz. at 401, 641 P.2d 888. The trial court in Rodriguez refused to strike the juror for cause, and Division Two of this court reversed the trial court's ruling finding that the juror's answers "demonstrated that she had serious misgivings about her ability to be impartial because of her recent experiences." 131 Ariz. at 402, 641 P.2d 888. In the instant case, although it is clear that Timewell was not pleased about sitting on a child molesting case, and was concerned about his ability to be fair, he ultimately assured the court that he could "always be completely objective instead of subjective" if he had to be. He did not indicate that he would try to be fair or that he hoped he would be fair, but that he, in fact, could and would be fair. He indicated this not only once but several times to the court and to both counsel. Because the trial judge has the opportunity to observe and listen to the potential jurors during voir dire examination he, the trial court, and not this court, is in the best position to determine whether a juror can render a fair and impartial verdict. The question whether to sustain or deny a challenge for cause is within the sound discretion of the trial court, and that decision will not be reversed absent a clear showing of abuse of discretion. State v. Rose, supra. Moreover, the party asserting that the trial court erred in denying a motion to strike a juror for cause has the burden of establishing that the juror is incapable of rendering a fair and impartial verdict. State v. Munson, 129 Ariz. 441, 631 P.2d 1099 (App. 1981); State v. Rose, supra.
In this case, the trial court had the opportunity to observe Timewell's demeanor and the tenor of his answers. The record reveals that Timewell's answers as to his ability to be objective and decide the case based solely on the evidence were ultimately unequivocal and certain. See State v. Turrentine, 122 Ariz. 39, 592 P.2d 1305 (App. 1979). We conclude, therefore, with regard to Timewell, that there is no showing that the trial court abused its discretion in denying the defendant's motion to strike for cause.
The defendant also contends that the trial court erred in denying his motion to strike venireman Feusarhens for cause. He contends that because of Feusarhens' employment as a police officer, and because of answers to voir dire questions, the record reveals that Feusarhens was uncertain as to whether he could be an impartial juror. The record belies the defendant's contentions.
Feusahrens' employment consisted primarily of talking to witnesses and victims of offenses over the phone and then completing the report. After his report was written, he rarely had further connection with the case. Although he had appeared as a witness in trial proceedings, he was not acquainted with the police officers in this case. He stated that he would not give a police officer's testimony added weight but that "I would have to make a decision there listening to it." He also indicated that he would not assume that the child of a police *559 officer was more credible than an ordinary citizen. In denying the defendant's motion to strike Feusahrens, the trial court noted its belief that Feusahrens had been an unusually open and candid venireman. We find no abuse of discretion.
ADMISSION OF PRIOR CONVICTION FOR IMPEACHMENT
The defendant next contends that the trial court erred in reversing its decision made prior to the first trial which had granted defendant's motion in limine excluding evidence of defendant's 1980 theft conviction for impeachment purposes. The defendant's argument is twofold: (1) that the record does not establish good cause for the trial court's action reversing itself on an issue it had previously determined; and (2) that the trial court abused its discretion in admitting the prior conviction. We reject both arguments.
Rule 16.1, Rules of Criminal Procedure, 17 A.R.S., provides that all pretrial motions must be made no later than 20 days prior to the date set for trial. Rule 16.1(d) provides:
Except for good cause, or as otherwise provided by these rules, an issue previously determined by the court shall not be reconsidered.
Defendant contends that the state has failed to establish good cause for reconsideration of the admissibility of the defendant's prior conviction. We find, however, that the comments of the trial court in reconsidering its ruling established good cause. The trial judge had presided in the earlier trial in this matter and stated as follows:
There are some new factors that have been brought to my attention that were not mentioned at the time this motion was argued previously. One of them is the recent Dixon case, and then the other is the starkness of the issue of credibility. I know that was raised earlier, prior to the first trial. But now that we have had that trial behind us the issue is a stark, cold issue of who are they to believe, the children or Mr. Davis.
After hearing the first trial in this matter, the trial court determined that the critical issue in the case was one of credibility, and that the jury was entitled to have before it any relevant evidence bearing on the credibility of the witnesses. The record thus amply reveals good cause for the trial court's reconsideration of the motion.
The defendant contends nevertheless, that the trial court abused its discretion in admitting the prior conviction.
Rule 609(a), Rules of Evidence, 17A A.R.S., provides that convictions for felonies or for misdemeanors involving dishonesty or false statement "shall be admitted" for the purpose of attacking credibility of a witness. The trial court must determine that the probative value of admitting the evidence outweighs its prejudicial effect. The decision of whether to admit evidence of a prior conviction for impeachment purposes is left to the discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. McElyea, 130 Ariz. 185, 635 P.2d 170 (1981); State v. Dixon, 126 Ariz. 613, 617 P.2d 779 (App. 1980).
In this case, the trial court held two hearings on the admissibility of the prior convictions. The issues were argued thoroughly and competently by the attorneys for both sides. The trial court considered the admissibility of the prior convictions carefully and with an obvious appreciation for their prejudicial effect. Ultimately, the trial court determined that only one, and not both of the defendant's prior convictions would be admitted for impeachment purposes. This ruling obviously stems from the trial court's effort to minimize the prejudicial effect of admitting a prior conviction. In State v. Dixon, supra, Division Two noted that where there was a direct conflict of testimony between an undercover agent and the defendant, "the jury should have before it all information which might reflect on the truthfulness of the defendant." 126 Ariz. at 618, 617 P.2d 779. The court also noted that any felony, even *560 one not involving dishonesty or false statement, has probative value on the issue of the credibility of the defendant. Therefore, the court concluded that the admission of the defendant's prior conviction was not error in that case. Similarly, in this case, the sole contested issue was the credibility of the victim. Defense counsel was able to effectively cross-examine several witnesses and elicit substantial testimony to the effect that the victim had lied on various occasions to her parents, her sister and others. Under these circumstances, we believe that the jury was entitled to have before it any information which might have bearing on the defendant's credibility also. We find no abuse of discretion in the trial court's ruling admitting the prior conviction.[2]
UNTIMELY ALLEGATIONS OF PRIOR CONVICTIONS
For his third issue, the defendant argues that the trial court erred in granting the state's motion to amend the information to allege two prior convictions when the motion was filed after the 20 day time limit set forth in Rules 16.1(b) and 16.1(c). Rule 13.5(a) provides that an indictment or information may be amended by adding an allegation of one or more prior convictions within the time limits of Rule 16.1(b). The comment to Rule 13.5 provides:
Because the prosecutor is often unable to obtain a rap sheet at the time the prosecution is commenced, he is given some leeway within which to add an allegation of a previous conviction to the charge.
Rule 16.1(c) provides that all motions not made 20 days prior to trial shall be precluded unless the moving party can show that the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it. The 20-day time limit of Rule 16.1(b) means 20 days before the first trial setting. State v. Superior Court, 127 Ariz. 175, 619 P.2d 3 (1980). In this case, the last day for motions was October 7, 1980, and the state's addendum to the information alleging the prior convictions was not filed until February 25, 1981. Therefore, the defendant concludes that the trial court erred in granting the motion to allege the prior convictions. City of Tucson v. Arndt, 125 Ariz. 607, 611 P.2d 960 (App. 1980).
A cursory review of City of Tucson v. Arndt would compel us to conclude that the trial court should have precluded the allegations of the prior convictions. However, we note that City of Tucson v. Arndt did not address the applicability of A.R.S. § 13-604(K). That statute provides in part as follows:
The court in its discretion may allow the allegation of a prior conviction, * * * at any time prior to trial, provided that when the allegation of a prior conviction is filed, the state must make available to the defendant a copy of any material or information obtained concerning the prior conviction. [Emphasis added]
Therefore, in this case, there is a specific statute in conflict with the provisions of Rule 13.5(a). The court in City of Tucson v. Arndt did not address the existence of the conflict. The comments to Rule 13.5(a) indicate a determination that a prosecutor must be given leeway within which to add the allegation of the prior convictions. We also note that the former code contained a similar provision allowing an allegation of a prior conviction any time prior to trial. Former A.R.S. § 13-1649. Cases construing the prior code provision indicate that the state was allowed to file an allegation of a prior conviction under the old code any time before trial. See e.g., State v. Kelley, 123 Ariz. 24, 597 P.2d 177 (1979); State v. Hadd, 127 Ariz. 270, 619 P.2d 1047 (App. 1980). In other words, the statutory provision was granted precedence over the provisions of Rule 13.5. Moreover, under the *561 former code, the defendant had to show prejudice before the reviewing court could find that the trial court abused its discretion in allowing the allegation of a prior conviction. In State v. Hadd, supra, it was held that where the defendant had notice of his prior convictions, he was not prejudiced by the state's allegation on the eve of trial. In this case, the defendant clearly had notice of the prior conviction. They were alleged in February of 1981, and the defendant's second trial took place in July of 1981. The defendant had ample opportunity to prepare to defend the allegations of the prior convictions. We find no error.
LESSER INCLUDED OFFENSE INSTRUCTIONS
For his last issue on appeal, the defendant argues that the trial court erred in refusing his request for instructions on sexual abuse and contributing to the delinquency of a child as lesser included offenses of child molesting. As to sexual abuse, this court recently held in State v. Cousin, 136 Ariz. 83, 664 P.2d 233 (1983) that sexual abuse pursuant to A.R.S. § 13-1404 is not a lesser included offense of child molesting. See also, State v. Aguirre, 130 Ariz. 54, 633 P.2d 1047 (App. 1981).
The defendant also requested the following instruction on contributing to the delinquency of a child as a lesser included offense of child molesting:
The crime of contributing to the delinquency of a minor requires proof that the Defendant, by some act, caused, encouraged or contributed to the delinquency of a child. For purposes of this instruction, the word "delinquency" means any act which tends to debase or injure the morals, health or welfare of a child, and the word "delinquent person" mean [sic] any person under the age of 18 years who violates the law of this state, or an ordinance of a county, city or town defining crime.
In order to find Defendant guilty of contributing to the delinquency of a minor, it is necessary that you find he had some intent to harm the victim, or some knowledge that the victim would be harmed by his conduct.
The court is required to give an instruction on a lesser included offense when the offense is necessarily included, i.e., when it is both a lesser included offense and when the evidence warrants the giving of the instruction. State v. Dugan, 125 Ariz. 194, 608 P.2d 771 (1980).
Contributing to the delinquency of a minor is defined in A.R.S. § 13-3613(A). The offense under the current criminal code is identical to the offense of contributing to the delinquency of a minor under the former criminal code provision A.R.S. § 13-822(A). The offense of child molesting is defined in A.R.S. § 13-1410, and is essentially identical to the former offense of child molesting as defined in the former A.R.S. § 13-653, with the exception that the new Code adds the culpable mental state of "knowingly". In State v. Sutton, 104 Ariz. 317, 452 P.2d 110 (1969), our Supreme Court held that contributing to the delinquency of a child is a lesser included offense of child molesting. Since the current definitions of contributing to the delinquency of a minor and child molesting are identical to the former definitions of those crimes, State v. Sutton and its progeny are still applicable.
The question remains whether in this case, the evidence supported the giving of the requested instruction. In State v. Jerousek, 121 Ariz. 420, 590 P.2d 1366 (1979), the Supreme Court found that the evidence did not support the giving of a lesser included offense instruction on contributing to the delinquency of a minor where "the defendant pled not guilty but presented no alternative explanation for his actions. He instead attempted to impeach the credibility of the victim and attempted to show, by cross-examining the doctor, that injury to the victim could have been caused by innocent means." 121 Ariz. at 428, 590 P.2d 1366. The court concluded that the evidence presented a classic guilty or innocent situation, and that the lesser included offense instruction was not required. In this case, the defendant likewise presented no *562 alternative explanation for his actions. He attempted to impeach the credibility of the victim, and he argued that the state had not proved its case.
An instruction on a lesser included offense is justified only when there is evidence upon which the jury could convict of the lesser offense and find that the state had failed to prove an element of the greater offense. State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969). The trial court need only give the lesser included offense instruction when the element that distinguishes the two charges is in dispute. State v. Yarbrough, 131 Ariz. 70, 638 P.2d 737 (App. 1980). In considering the evidence, the jury could not have convicted the defendant for contributing to the delinquency of a child while finding that the state had failed to prove an element of child molestation. The state of the record before us is such that the defendant can only be guilty of the crime charged or not guilty at all. Accordingly we find that the trial court did not err in refusing the proffered instruction.
Affirmed.
JACOBSON, P.J., and CONTRERAS, J., concur.
NOTES
[1] A.R.S. § 13-1410.
[2] Although the defendant chose not to testify in the second trial, defense counsel had "drawn the sting" by mentioning defendant's 1980 theft conviction in opening statement. Thus, although the prosecutor never elicited evidence of the prior conviction, defendant's motion in limine, made prior to trial, is sufficient to preserve the question on appeal. See State v. Ellerson, 125 Ariz. 249, 609 P.2d 64 (1980).