670 P.2d 1209

**STATE of Arizona, Appellee,**

v.

**Ronald Joseph EISENLORD, Appellant.**

**No. 1 CA–CR 6427.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 20, 1983.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, and Gary A. Fadell, Asst. Atty. Gen., Phoenix, for appellee.

Claude D. Keller, Kingman, for appellant.

## OPINION

YALE McFATE, Retired Judge.

### FACTS

The defendant brings this appeal from his conviction on three counts of sale of marijuana, Class 2 felonies, following a jury trial. He was sentenced to concurrent terms of fourteen years on each count. The defendant presents the following issues on appeal:

1. Whether the prosecutor's comments, in his opening statement, regarding the defense of entrapment constituted reversible error.

2. Whether the prosecutor's failure to disclose evidence prior to trial prejudiced the defendant.

3. Whether the trial court erred in failing to grant defendant a trial continuance.

4. Whether the fact that the panel of prospective jurors consisted of nineteen rather than twenty veniremen denied defendant a fair trial; and

5. Whether the prosecutor's comments in closing argument constituted reversible error.

At trial, the prosecution presented the testimony of James Benjamin Lamas who, acting as a police informant under the name Ron Chisolm, purchased marijuana from defendant on three occasions. The first two sales were observed by Sergeant Don Martin of the Kingman Police Depart-

ment. During the last marijuana sale, Lamas was equipped with an electronic device enabling Sergeant Martin to overhear the transaction. Lamas purchased two bags of marijuana for $40.00 each at the first and second transaction and a pound of marijuana for $375.00 at the last sale.

The defendant testified at trial and asserted the defense of entrapment. The testimony of Lamas and the defendant conflicted regarding the content of their conversations prior to the first two marijuana sales. The defendant testified that Lamas requested defendant to get him some marijuana and that defendant was reluctant to procure it. Lamas testified that the defendant initiated the conversations concerning the marijuana purchases and that he did not urge the defendant to sell him marijuana. At trial, both defendant and Lamas were impeached by evidence of prior convictions.

## PROSECUTORIAL MISCONDUCT

The defendant argues that the prosecutor made improper remarks in his opening statement when he defined the defense of entrapment. The defendant asserts that the prosecutor's comments regarding the defendant's anticipated defense infringed upon his fifth amendment right to remain silent as he was required to testify to entrapment in order to refute the prosecutor's statements. We find no merit to defendant's contention.

In his opening statement, the prosecutor argued:

I also need to talk to you a little bit about entrapment. You've probably figured out from some of the questions that were asked of you that it is possible that there may be a case or the situation may be that during this trial that entrapment is raised; that you are going to have to decide whether, supposing that you—(interrupted)

MR. RUSHFORTH: Your honor, I'm going to object to this portion of Mr.

Conn's argument. He's anticipating the defense, and at this point he can only make an opening statement as to what he intends to prove. It is not proper opening argument.

MR. CONN: Your honor, I'm relying on the material which has been provided to the State at this time as to what the defenses are going to be in this case.

THE COURT: Overruled. Proceed.

MR. CONN: (Continuing) Be aware of the possible entrapment situation throughout the testimony.

Now, entrapment means that a person may in fact commit a crime but still be found not guilty if you are convinced that they were entrapped into committing the offense.

It's very possible, even through the testimony of the State's witnesses, that there may be established the possible entrapment defense in this case.

A lot of you probably think you have an idea of what entrapment is. Probably most of you think of the FBI agents dressing up as Arab sheiks and trying to get congressmen to sell out for personal favors, and in a sense that's probably a classic example of what may or may not be entrapment.

But entrapment in Arizona is very strictly defined. There are three things that are necessary before a person can be found not guilty because he was entrapped. The first thing is that the idea of committing the crime has to originate with either a police officer or one of his agents, not with the defendant. So, the first issue is where did the idea to commit the crime actually arise. Did it arise in the mind of the defendant? ... or did it arise in the minds of the police officers?

The second thing for entrapment is that you have to find that the officers or their agents urged the defendant to commit the crime, which sort of presupposes a reluctance on the part of the defendant to actually engage in criminal activity, a reluctance which is overcome by the urg-

ing at the hands of the cops or their agents to go ahead and commit the crime.

The third thing you have to find to support an entrapment defense is that the defendant was not predisposed to commit the crime. In other words, that at the time that he committed the crime he didn't have any disposition towards committing the crime; the only reason he committed the crime was because the cops, in essence, urged him to do so, and that he never had the idea to do so.

Just keep those factors in mind during the presentation of the State's case. Analyze the testimony of everybody, with this possible defense in mind.

■ An examination of the prosecutor's remarks reveals that they did not go beyond the proper scope of an opening statement. The purpose of an opening statement is to advise the jury of the questions and issues involved in the case so that it will have a general idea of the evidence and testimony to be introduced during the trial. *State v. Burruell,* 98 Ariz. 37, 401 P.2d 733 (1965); *State v. Hughes,* 104 Ariz. 535, 456 P.2d 393 (1969).

■ In the case at bar, the prosecutor merely advised the jury of a possible defense in the case in order to prepare them for evidence which could be introduced at trial. The prosecutor's comments were proper as defense counsel had given notice that entrapment was a defense. The fact that the prosecutor anticipated and discussed the possibility that defendant might raise an entrapment defense did not necessitate defendant testifying at trial. *State v. Nilsen,* 134 Ariz. 431, 657 P.2d 419 (1983). Had defendant not testified, the trial court would have instructed the jury to draw its conclusions only from the testimony and evidence presented during trial, and the remarks regarding entrapment made in the prosecution's opening statement would have been disregarded. We are not convinced that defendant's decision to testify was necessitated by the prosecutor's opening state-

ment related to entrapment. We find no error.

## NONDISCLOSURE OF EVIDENCE

The defendant claims that the trial court erred by denying defendant a new trial as the prosecutor failed to disclose, prior to trial, evidence that informant Lamas had passed bad checks while acting under an assumed name. Although the defendant was granted a continuance during the middle of trial and the evidence was obtained and presented to the jury, the defendant contends that the pretrial nondisclosure of the evidence denied him a fair trial. Specifically, the defendant argues that the nondisclosure adversely affected his trial strategy and he was prejudiced by the delay caused by the continuance granted defendant to remedy the nondisclosure. We find the defendant's arguments without merit.

During trial, defense counsel stated that he recently had been advised that informant Lamas, acting under the name of Ron Chisolm, had circulated numerous bad checks in Kingman. Counsel requested a continuance to investigate the existence of the bad checks as the evidence would be relevant for impeachment purposes; the trial was continued from June 23, 1981 at 2:00 p.m. until 9:50 a.m. the following morning. When trial resumed, evidence that Lamas had passed bad checks was presented to the jury.

Rule 15.1(a), Rules of Criminal Procedure, sets forth the pretrial disclosures to be made by a prosecutor to defense counsel. The rule states in pertinent part:

No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:

\* \* \* \* \* \*

(7) All material or information which tends to mitigate or negate the defendant's guilt as to the offense charged, or

which would tend to reduce his punishment therefor, including all prior felony convictions of witnesses whom the prosecutor expects to call at trial.

‑ The sanctions for nondisclosure are set forth in rule 15.7(a), Rules of Criminal Procedure:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:
>
> (1) Ordering disclosure of the information not previously disclosed.
>
> (2) Granting a continuance.
>
> (3) Holding a witness, party, or counsel in contempt.
>
> (4) Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; and
>
> (5) Declaring a mistrial when necessary to prevent a miscarriage of justice.

■ It is clear from the record that the pretrial nondisclosure of the evidence was not deliberate on the part of the prosecution as the prosecutor had no knowledge of it prior to defense counsel's motion to continue. The remedy sought by counsel for nondisclosure was a continuance pursuant to Rule 15.7(a)(2). The fact that the evidence was obtained during the continuance and presented to the jury when the trial resumed indicates that a continuance rather than granting a new trial was an appropriate sanction. Moreover, the choice of sanctions is within the trial court's discretion and will not be disturbed on appeal absent a showing of prejudice. *State v. Jessen,* 130 Ariz. 1, 633 P.2d 410 (1981). In *Jessen,* our supreme court held that when previously undisclosed exculpatory information is revealed at trial and presented to the jury, there is no due process violation even though the pretrial nondisclosures may have affected defendant's trial preparation

and strategy. There is no indication in the record that the half day continuance prejudiced the defendant. Accordingly, we find no merit to defendant's contentions on the issue of nondisclosure of evidence.

## CONTINUANCE

The defendant contends that the trial court erred in failing to grant defendant a continuance during the middle of trial so defendant could obtain information regarding Lamas' past activities as an informant. At the time the court denied defense counsel's request for continuance, the trial had just resumed after being delayed by the continuance previously granted the defendant.

■ On appeal, this court will not interfere with a trial court's action in granting or denying a continuance unless it clearly appears that the discretion of the trial court has been so abused as to prejudice the defendant. *State v. Buggs,* 108 Ariz. 425, 501 P.2d 9 (1972); *State v. Sullivan,* 130 Ariz. 213, 635 P.2d 501 (1981). Moreover, a trial court should grant a continuance in the middle of trial only under the most exigent circumstances. *State v. Blodgette,* 121 Ariz. 392, 590 P.2d 931 (1979). We find, in the case at bar, that the trial court did not abuse its discretion in denying the defendant's motion to continue as no exigent circumstances existed requiring a continuance. Defense counsel thoroughly interviewed Lamas prior to trial and was aware of the fact that he had worked with police as an informant on other occasions. The denial of a continuance for the purpose of further investigation of Lamas' past activities as an informant was proper in light of the fact that defense counsel had a prior opportunity to discover the informant's past activities at the pretrial interview and failed to pursue the matter. Additionally, the record reveals that at least a portion of the evidence defense counsel hoped to find concerned activities of Lamas subsequent to his involvement in this case, which would be irrelevant.

Defense counsel also admitted that he would use the evidence he hoped to discover in Lamas' record for impeachment purposes. We have long held that it is not an abuse of discretion to deny a continuance where the testimony sought is to be used for impeachment. *State v. Jackson,* 112 Ariz. 149, 539 P.2d 906 (1975); *State v. Griffin,* 117 Ariz. 54, 570 P.2d 1067 (1977); *State v. Loyd,* 118 Ariz. 106, 574 P.2d 1325 (1978). We find no error resulting from denying the defendant's motion for continuance.

## JURY PANEL

Defendant complains that because a full panel of twenty veniremen was not provided from which to exercise peremptory challenges, he was deprived of due process of law, resulting in reversible error irrespective of a showing of actual prejudice.

The trial court excused for cause several prospective jurors, leaving a venire panel of nineteen members. When defense counsel advised the trial court that the venire panel consisted of nineteen rather than twenty prospective jurors, the prosecutor offered to exercise only five of his six allotted peremptory challenges pursuant to Rule 18.4 c(1)(ii), Arizona Rules of Criminal Procedure, 17 A.R.S.[1] In addition, he informed the court that the state would exercise its sixth peremptory challenge to strike any twentieth venireman called to complete the panel. Defense counsel did not relinquish any of his six peremptory challenges. The trial court denied defendant's motion for a continuance for the purpose of calling another venireman. The state thereupon confined its challenges to five and the defendant was afforded six.

 Rule 18.5(b) and (f)[2] require a minimum twenty member venire panel after challenges for cause are completed when an eight member jury is to be selected. It is clear that this rule was violated. Generally, however, a case will not be reversed on appeal because of irregularities at the trial level unless the appellant's rights are prejudiced. *Penaskovic v. F.W. Woolworth Co.,* 20 Ariz.App. 403, 513 P.2d 692 (1973). A conviction will not be set aside due to mere technical errors or defects in the record which do not affect the defendant's substantial rights. *State v. Thompson,* 68 Ariz. 386, 206 P.2d 1037 (1949). This is particularly true regarding the "rules of law relative to the selection and formation of juries, our decisions being to the effect that a defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial." 68 Ariz. at 391, 206 P.2d at 1040. The defendant is not entitled to a perfect jury empaneled through a perfect system. *State v. Taylor,* 112 Ariz. 68, 537 P.2d 938 (1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976).

 However, the right to exercise a peremptory challenge is a substantial right and not a technical or procedural one. The

1. Rule 18.4 c provides:
 c. Peremptory Challenges.
 (1) *In General.* Both parties shall be allowed the following number of peremptory challenges:
 (i) Ten, if the offense charged is punishable by death.
 (ii) Six, in all other cases tried in Superior Court.
 (iii) Two, in all cases tried in non-record courts.
 (2) *Upon Joint Trial of Several Defendants.* When there is more than one defendant, each shall be allowed ½ the number of peremptory challenges allowed to one defendant. No additional peremptory challenges shall be allowed to the prosecutor.‚

(3) *Agreement Between the Parties.* The parties may agree to exercise fewer than the allowable number of peremptory challenges.

2. Rule 18.5(b) and (f), Arizona Rules of Criminal Procedure, 17 A.R.S. provide:
 b. Calling a Full Jury Box. The court shall then call to the jury box a number of jurors equal to the number to serve plus the number of alternates plus the number of peremptory challenges allowed the parties.
 f. Challenge for Cause. At any time that cause for disqualifying a juror appears, the court shall excuse him and call another member of the panel to take his place in the jury box and on the clerk's list of jurors. Challenges for cause may be made out of hearing of the jurors, but shall be of record.

denial or impairment of that right constitutes reversible error without proof of prejudice. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Wasko v. Frankel,* 116 Ariz. 288, 569 P.2d 230 (1977); *State v. Thompson, supra; Penaskovic v. F.W. Woolworth Co., supra.*

■ We also note that art. 2 § 23 of the Arizona Constitution provides that the right of trial by jury shall remain "inviolate". Hence, Rule 18.5 takes upon constitutional significance. Since this rule was clearly violated, we must set aside defendant's conviction unless we find the violation constitutes harmless error, beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Sorrell,* 132 Ariz. 328, 645 P.2d 1242 (1982); *State v. Sanchez,* 130 Ariz. 295, 635 P.2d 1217 (App.1981). Based upon the facts of this case we find, beyond a reasonable doubt, that the violation in no way infringed upon defendant's constitutional right to a jury trial.

■ Defendant's right to exercise his peremptory challenges was neither denied nor adversely affected by the absence of the twentieth venireman. Defendant had no right to select any particular juror (such as a hypothetical twentieth venireman), but only the right to peremptorily exclude six members from the panel after the state exercised its peremptory challenges. *State v. Lovell,* 97 Ariz. 269, 399 P.2d 674 (1965); *State v. Thompson, supra;* Rule 18.5 g, Arizona Rules of Criminal Procedure.[3] This right he fully exercised, leaving a lawful trial jury of eight members. Defendant makes no claim that this jury was unfair or partial.

If defendant was denied any right, it was the chance of obtaining a more favorable trial jury from a twenty member panel by a happenstance of the following events: (1) the prosecutor's decision not to strike the twentieth member; and (2) the defendant's decision, as a result of his appraisal of the worth of that particular juror, that he serve on the trial jury. But the defendant did not lose any chance to bring about these fortuitous circumstances because of deprivation or curtailment of his right to exercise peremptory challenges. Assuming the challenging process had commenced with a full panel of twenty veniremen, the exercise of defendant's right to strike jurors peremptorily could not aid him in getting the twentieth venireman on the trial jury. Contrariwise, should he direct a challenge to number twenty, it would defeat his purpose. Moreover, even though the state struck number twenty from the full panel, defendant's right to strike six other members from those left on the panel would remain unaffected.

■ The defendant argues that Rule 18.4 c(3) requires an agreement between the parties to allow a lesser number of peremptory challenges than the number provided by rule. We see no merit to this argument. A party may unilaterally and voluntarily waive his right to exercise a peremptory challenge. *Application of Williams,* 85 Ariz. 109, 333 P.2d 280 (1958); *State v. Thompson, supra.* The rule merely sanctions an enforceable agreement to exercise fewer than the allotted number of challenges.

Finally, the defendant points to a statement on *State v. Munson,* 129 Ariz. 441, 631 P.2d 1099 (App.1981), as support for his contention that his peremptory challenge rights were impaired by the lack of a twentieth venireman. In *Munson,* Division Two of this court stated that, "Appellant was entitled to a venire panel of 20 qualified

---

**3.** Rule 18.5 g reads as follows:

g. Exercise of Peremptory Challenges. Following examination of the jurors, the prosecutor shall exercise his peremptory challenges on the clerk's list. The defendant shall then exercise his peremptory challenges on the same list. If the parties fail to exercise the full number of challenges allowed them, the clerk shall strike the jurors on the bottom of the list until only the number to serve, plus alternates, remain.

jurors from which he could exercise his six peremptory challenges ....". *Id.* at 442, 631 P.2d at 1100.

We find the facts on which the *Munson* decision was based to be distinguishable. In that case, the appellant-defendant claimed that the trial court erroneously failed to excuse two members of the venire panel for cause. Neither side waived any of its peremptory challenges, and the appellant argued he was required to exercise two of his peremptory challenges against the allegedly unqualified jurors, thus clearly impairing his rights. *See also Wasko v. Frankel, supra.*

Here, defendant does not dispute that fourteen qualified veniremen remained after the prosecutor exercised his challenges. Hence his peremptory challenge rights were unaffected. *Munson* and similar cases involving venire panels containing members subject to challenge for cause are not applicable to the facts of this case.

In view of the prosecutor's avowal to the court that he would exercise only five challenges against the nineteen member panel and that if the twentieth venireman were called he would exercise his sixth challenge by striking him, we find an additional reason to sustain the court's decision to relegate the state to only five challenges and to proceed with only nineteen on the panel. Although the court did not expressly indicate it accepted the prosecutor's offer, we believe, considering what actually transpired, that it impliedly did so. By proceeding with nineteen veniremen and limiting the prosecutor to five challenges, the result was the same as though the court had called the twentieth member into the box and the state, with six peremptory challenges, had stricken him, leaving only five remaining challenges. The fruitless procedural exercise of calling the twentieth member merely to have him stricken was thus avoided. Under such circumstances, defendant would have gained no advantage from having a full venire panel and could claim no prejudice from failure to so provide.

In view of all the circumstances, we find no reversible error from the action of the trial court in proceeding with a venire panel of only nineteen members.

## CLOSING ARGUMENT

Lastly, the defendant contends that the prosecutor, in his closing argument, made improper remarks prejudicial to defendant. In determining whether a prosecutor's remarks require reversal, our supreme court has stated:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." *Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936).

*State v. Moore,* 112 Ariz. 271, 275, 540 P.2d 1252, 1256 (1975).

The prosecutor made the following comment in closing argument:

I would also suggest to you that the criminal record of the defendant might tell you something about his predisposition to commit a crime. We're talking about somebody who has three prior felony convictions. This is somebody who obviously has been through the system, is aware of what crime is.

MR. RUSHFORTH: Your Honor, I object to this argument. It's contrary to the jury instructions. It's a misstatement of the law.

THE COURT: Sustained.

The comment by the prosecutor was improper as defendant's prior felony convictions for first degree burglary and possession of stolen property were admitted into evidence for impeachment purposes only. As a general rule, evidence of crimes other than those for which defendant is being tried is not admissible because of the

questionable relevancy of the evidence and prejudice to defendant. However, an exception to this rule exists where the crimes tend to show motive, intent, absence of mistake or accident, common scheme or plan or identity. *State v. Mosley,* 119 Ariz. 393, 581 P.2d 238 (1978); Rule 404, Rules of Evidence. As the defendant's prior convictions were not admitted into evidence to show motive, intent, absence of mistake or accident, common scheme or plan or identity, it was improper for the prosecutor to argue to the jury that defendant's prior felony convictions indicated a predisposition to commit the crime. A verdict of guilt may not be based upon grounds that defendant, having committed previous crimes, is likely to have committed the offense in question. *State v. Rose,* 121 Ariz. 131, 589 P.2d 5 (1978).

■ While the jurors would not have been justified in considering the prosecutor's remarks in determining their verdict, we find that in this case the jurors were probably not influenced by the prosecutor's statements. As a general rule, alleged prosecutorial misconduct must be objected to and a curative instruction requested. *State v. White,* 115 Ariz. 199, 564 P.2d 888 (1977). In the instant case, defense counsel did not request a curative instruction, move for a mistrial, or request that the objectionable portion of the prosecutor's argument be stricken. *Cf. State v. Marvin,* 124 Ariz. 555, 606 P.2d 406 (1980). Moreover, the trial court gave the following instruction to the jury:

> The fact that a witness has been convicted of a felony may be considered only for the purpose of determining the credibility of that witness. The fact of that conviction does not necessarily destroy nor impair the witness's credibility. It is one of the circumstances that may be considered in weighing the testimony of such witness.
>
> Such evidence was not received and may not be considered to prove he is a person of bad character or that he has a

disposition to commit crimes. The fact that a witness has been convicted of a misdemeanor involving dishonesty or false statements may be considered only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy nor impair the witness's credibility. It is one of the circumstances that may be considered in weighing the testimony of such witness.

> Such evidence was not received and may not be considered to prove he's a person of bad character or that he has a disposition to commit crimes.

The trial court also instructed the jury that the arguments and comments of the attorneys were not evidence. The evidence presented at trial supports the jury verdict that defendant was not entrapped into committing the offense. Although the defendant testified that Lamas requested him to buy some marijuana, defendant never testified that Lamas urged or enticed him to commit the crime.

■ As the prosecutor's remarks were brief, and the trial court instructed the jury that defendant's prior felony convictions could not be considered to prove that he had a propensity to commit crimes, we find it unlikely that the jury was influenced by the prosecutor's remarks. Therefore, we find that the remarks of the prosecutor, while improper, constituted harmless error under the circumstances of this case.

The defendant also argues that the prosecutor improperly referred to defendant's possible punishment in closing argument. The prosecutor argued as follows:

> Mr. Lamas perhaps at some point has a ten-year prison sentence hanging over his head. It is suggested that this provided the incentive for him to come in here and lie. What do you think is hanging over the defendant's head? We're talking about somebody who, if he's convicted here, is—

> MR. RUSHFORTH: Your Honor, I object to this line of argument.

**396**

THE COURT: Sustained.

 It is improper for the jury to consider defendant's possible punishment in reaching its verdict. *Cf. State v. Jaramillo,* 110 Ariz. 481, 520 P.2d 1105 (1974). In the case at bar, the prosecutor did not indicate the sentence defendant would receive if convicted. While the prosecutor's reference to the informant's possible punishment for other offenses may have indicated that defendant would receive a like sentence if convicted of the offenses charged, we find that the error was cured by the trial court's instruction to the jury that "[i]n deciding whether the defendant is guilty or not guilty, do not consider the possible punishment" and the court's action of promptly sustaining defense counsel's objection to the prosecutor's remarks.

On other occasions, this court has held that the cumulative effect of improper statements made in closing argument mandates reversal. *State v. Filipov,* 118 Ariz. 319, 576 P.2d 507 (App.1977); *State v. Woodward,* 21 Ariz.App. 133, 516 P.2d 589 (1973). In the instant case, we find that the cumulative effect of the prosecutor's remarks does not warrant reversal. The improper remarks were brief and not designed to inflame the jury. They were objected to by defense counsel, sustained by the court, and cured by instructions. This court's comments and rulings, however, are not to be interpreted as condoning such misconduct. In another setting, with other evidence in the record and different rulings by the court, such comments of counsel could cause reversal. We seriously doubt, however, that such remarks individually or collectively in the setting of this case improperly influenced the jury in reaching its verdict and we find no significant prejudice therefrom.

Affirmed.

KLEINSCHMIDT, P.J., and CONTRERAS, J., concur.

NOTE: The Honorable Yale McFate, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.