564 P.2d 888

**STATE of Arizona, Appellee,**

v.

**Roger Lee WHITE, Appellant.**

**No. 3644.**

Supreme Court of Arizona, In Banc.

May 2, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Diane M. DeBrosse, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Paul J. Prato, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Appellant, Roger Lee White, was convicted of armed robbery in violation of A.R.S. §§ 13–641, 13–643, 13–138, 13–139 and 13–140 and sentenced to the Arizona State Prison for not less than fifteen years nor more than thirty years. On the basis of this conviction the trial court revoked appellant's probation granted for a previous conviction and sentenced appellant to not less than one year nor more than two and one-half years to run concurrently with the sentence for armed robbery. Appellant made a timely appeal from both judgments and sentences. We take jurisdiction pursuant to 17A A.R.S., Supreme Court Rules, rule 47(e)(5). The judgment of the trial court in the armed robbery conviction is affirmed. The probation revocation is vacated.

On November 28, 1973, appellant pled guilty to attempted burglary, second degree, open-end. On December 21, 1973 the trial court found appellant guilty and suspended imposition of sentence, placing appellant on probation for a period of two years to date from December 21, 1973. A petition to revoke probation was filed on March 6, 1974. The court denied the peti-

tion on August 5, 1974 and reinstated appellant on probation under the same terms and conditions previously imposed with the additional term that he be confined in the Maricopa County Jail for three months beginning July 8, 1974.

On July 24, 1975 appellant and another suspect were charged in a complaint with armed robbery in violation of A.R.S. §§ 13–641 and 13–643. (Two other charges listed in the complaint were later dismissed.) Appellant was arraigned on August 11, 1975, and his probation officer filed a petition to revoke probation on that date also. Trial was set for September 30, 1975. At the preliminary revocation hearing on August 19, 1975, the trial court decided the matter of the final revocation hearing would be held in abeyance pending the outcome of the armed robbery charge.

Due to a number of continuances, to be discussed infra, appellant and a codefendant (not a party to this appeal) were tried on December 9, 1975. After a jury verdict of guilty, the court entered judgment on January 30, 1976 and sentenced appellant. The court also revoked appellant's previous probation and sentenced him for a term to run concurrently with the robbery sentence.

Appellant raises five issues on appeal:

1. Did the trial court commit reversible error by denying appellant's motion to dismiss for violation of the speedy trial rules?

2. Did prosecutorial misconduct deny appellant a fair trial?

3. Did the trial court's comments to the jury prejudice appellant's cause?

4. Did the trial court commit reversible error by refusing to allow appellant to comment upon the privilege against self-incrimination and by denying severance?

5. Was the trial court without jurisdiction to revoke appellant's probation?

### Speedy Trial

Appellant argues the trial court erred in computing his last day for trial under rule 8,[1] 17 A.R.S. Rules of Criminal Procedure.

1. Appellant's case was filed before the 1975 amendments to rule 8 became effective and

therefore this opinion is applicable to the original 1973 rule.

Appellant also argues the court erred in excluding under rule 8.4(c) the seven day delay due to a judicial conference at which the Arizona Supreme Court required attendance by all trial judges. Appellant argues these alleged time limit violations require reversal of his conviction. We find no violation of rule 8.

■ Appellant was arraigned on August 11, 1975 making his last trial day October 10, 1975. On September 30, 1975, the date originally set for trial, appellant's co-defendant was granted a motion to continue the trial from that date until October 29, 1975 and those 29 days were properly excluded in accordance with rule 8.4(d) and (e).[2] Then appellant's last day for trial was November 10, 1975. (Numerically the date was November 8 but since that was a Saturday, pursuant to rule 1.3, Monday, November 10, became the last trial day).

On October 28, the trial court on its own motion reset the trial date to November 10, 1975, but made no exclusion. On November 7, the trial court granted the state's motion to continue the trial. As to appellant, the court excluded 24 days from November 8 to December 2, 1975, although as to his codefendant the court excluded 22 days from November 10 to December 2, 1975. Trial was set for December 2, 1975. At that time, since 24 days were excluded as to

appellant, his last trial day was December 4, 1975.

On December 2, 1975 the trial court found that appellant's last trial day was December 4, 1975 (as was his codefendant's who had been arraigned on a later date). It is this finding which appellant alleges to be error. From the foregoing chronology, it is clear that December 4, 1975 was correct. We find no violation of rule 8.2.

■ Appellant's next allegation of a rule 8 violation involves the trial court's decision on December 2, 1975 to continue the trial to December 9, 1975. A judicial conference had been set for the last trial day, December 4, 1975 and this Court had ordered all Superior Court Judges to attend. For this reason the court reset the trial date to December 9, 1975 and excluded the period from December 2 through December 9, 1975 pursuant to rule 8.

Appellant argues that this exclusion was not proper under rule 8.4(c).[3] We disagree.

Under the present rule 8.4(c), as amended 1975, if a suspension of the rules is necessitated by a congestion of the trial calendar and extraordinary circumstances, application must be made to the Chief Justice of the Arizona Supreme Court, rule 8.4(c), Rules of Criminal Procedure, as amended 1975. Under the old rule the finding of extraordinary circumstances and congestion

---

**2.** Rule 8.4 "Excluded periods," parts (d) and (e) read:

"d. Delays resulting from continuances in accordance with Rule 8.5, but only for the time periods prescribed therein.

"e. Delays resulting from joinder for trial with another defendant as to whom the time limits have not run when there is good cause for denying severance. In all other cases, severance should be granted to preserve the applicable time limits.

Rule 8.5 "Continuances" reads:

"a. *Form of Motion.* A continuance may be granted only upon written motion, stating with specificity the reasons justifying it, and a certificate of the signer that it is made in good faith. A second continuance may be granted upon a second motion and certificate. Any additional continuance in the case may be granted only by the presiding judge.

"b. *Grounds for Motion.* A continuance shall be granted only upon a showing that

extraordinary circumstances exist and that delay is indispensable to the interests of justice. A continuance may be granted only for so long as is necessary to the interests of justice, and in no case for longer than 30 days.

"c. *Copies of Order.* Upon granting a motion by either party for a continuance the court shall direct a minute entry specifically enumerating its reasons. The clerk shall send a copy to each of the parties, to the presiding judge, and to the Chief Justice of the Arizona Supreme Court. An order denying the motion may be entered summarily."

**3.** Rule 8.4 "Excluded periods", part (c) reads:

"c. Delays necessitated by congestion of the trial calendar, but only when the congestion is attributable to extraordinary circumstances, in which case the presiding judge shall promptly notify the Chief Justice of the Arizona Supreme Court of the circumstances."

was made by the trial court and the Chief Justice was promptly notified.

Under the facts of this case, and limited only to the Rules of Criminal Procedure (1973), we do not believe the trial court abused its discretion in finding that the Judicial Conference of the State of Arizona which ordered all trial judges to be in attendance was, in fact, an extraordinary circumstance causing a congestion of the trial calendar which, in turn, necessitated a five day delay. We find no violation of the speedy trial requirements.

For the foregoing reasons we hold the trial court did not err in denying appellant's motion to dismiss for violation of the speedy trial rules.

### Prosecutorial Conduct

Appellant alleges two instances amounting to prosecutorial misconduct denying him a fair trial. One instance occurred when the State was presenting its case and involved evidence not admitted. The other involved statements made during closing argument. We find no reversible error.

The record reveals that the prosecutor displayed within view of the jury items not introduced into evidence. Appellant made proper objection and the court directed the prosecutor to take the items to the clerk's desk. Instead, the credit cards remained, albeit face down, on the counsel's table approximately six feet from the front row of the jury. Appellant never requested a curative instruction admonishing the jury to disregard those items. Appellant did, however, move for mistrial after the State rested its case and the trial court denied this motion.

The rule in Arizona is that ordinarily alleged prosecutorial misconduct must be objected to and a curative instruction requested because then the trial court has a chance to cure the error. *Rutledge v. State,* 41 Ariz. 48, 15 P.2d 255 (1932). Appellant's counsel argues that no instruction could cure this error and therefore the lack of a request should not constitute waiver here. We disagree. It is true that reversi-

ble error may be found despite lack of objection and request for instructions when it appears affirmatively from the circumstances of the trial that the conduct of the prosecutor has been such that it must be presumed to have resulted in a miscarriage of justice. *Rutledge v. State,* supra. Such is not the case here. The record is insufficient to support a conclusion that the prosecutor acted in bad faith. Also, there is no affirmative evidence in the record to show sufficient prejudice to appellant so that no possible instruction could cure the error. In fact, there is no showing that the jury actually viewed the items closely enough to read what they said. There was no reversible error.

Appellant's second contention regarding prosecutorial misconduct involves alleged comments during closing argument on counsel's personal belief as to appellant's guilt and alleged comments on the truth of the State's witnesses' testimony. The argument is based on the following comments:

"This jury has seen form in action through testimony of witnesses, bits and pieces.

"On those bits and pieces, you are going to be asked to convict Mr. White and Mr. Anderson, because every bit of that testimony, ladies and gentlemen, is true."

     *      *      *      *      *      *

"We don't deal with percentages.

"We deal in common sense. We deal in facts, and we deal with the law.

"We are not mathematicians. We are human beings, each and every one of us, including the witnesses, are subject to the same frailties and imperfections.

"We don't remember everything the same way, except the fact that Mrs. Silvio was robbed and those two did it."

     *      *      *      *      *      *

"Mrs. Silvio, Mr. Ross, and Mrs. Ross conspired to frame two black people? Two innocent black people? Would they ask you to convict two innocent people so that the alleged real robbers would still be out there?

"They didn't ask you to do that. Nor do I."

■ We find these statements range from unwise word choice to mildly improper but none is so improper or prejudicial as to require reversal. The statement that the testimony is true does constitute an improper comment on the credibility of the State's witnesses but does not rise to such a level of impropriety as to require reversal. *State v. Moore,* 112 Ariz. 271, 540 P.2d 1252 (1975). The second statement is clearly a common sense reminder to the jury that minor discrepancies are bound to occur in testimony and the use of the word "we" in the last sentence is an unfortunate word choice rather than a personal opinion as to the defendant's guilt and was undoubtedly understood as such by the jury. Appellant argues the third statement is an improper opinion on the credibility and character of the witnesses as well as an improper opinion as to his guilt by implying there would be no prosecution if the defendants were not guilty. It is clear, however, that the statement is an answer to a charge of conspiring to frame innocent persons and merely points out how absurd it would be to do so. We find no error requiring reversal.

*Trial Court's Comment*

The trial court, after the reading of the information but before the calling of the State's first witness, gave a short explanation to the jury of the general proceedings in trial. The court told the jury that both sides *may or may not make* opening statements; the state *will* offer evidence to support the charge; the defense *may* make its deferred opening statement; "[t]hen, the defense shall offer evidence in support of the defendants;" both sides *may* offer rebutting evidence; both sides present closing argument and then the state makes the final argument.

Appellant argues that the underlined sentence is an incorrect statement of law and prejudiced defendant because it improperly placed on the defense a burden to produce evidence. The use of the word "shall" in that sentence as opposed to "may" in oth-

ers, appellant contends, left an impression on the jury that the defense must offer evidence in its support, thereby depriving him of his Fifth Amendment right not to testify as well as his right to have the burden on the state.

■ Appellant did not object to these comments when they were made. That failure, however, does not prevent review of the issue on appeal since deprivation of a defendant's right not to testify and misplacement of the burden of proof constitute fundamental error which "goes to the foundation of the case" and "takes from a defendant a right essential to his defense." *See State v. Pulliam,* 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960).

■ If the challenged statement had been the only message to the jury concerning burden of proof and right not to testify, appellant would have a strong argument that denial of a fair trial mandates reversal here. The instructions to the jury, however, corrected any misimpression the jury may have had. The court instructed the jury properly that the "law does not require a defendant to prove his innocence or produce any evidence;" that a defendant is "presumed by law to be innocent;" that the "burden of proving the defendant guilty beyond a reasonable doubt rests upon the State" and "[t]his burden never shifts throughout the trial;" that the "State must prove all of its case against the defendant with evidence that the State itself gathers" and "[t]herefore, the defendant is not required to testify;" that the jury "must not conclude the defendant is likely to be guilty because he does not testify;" and the jury "must not discuss [defendant's failure to testify] or let it affect [their] deliberations in any way."

The jury received clear, proper and emphatic instructions on burden of proof and failure to testify. The possible impact of the mistaken word choice in the court's original statement was cured and therefore there is no error. *State v. Richardson,* 110 Ariz. 48, 514 P.2d 1236, *cert. denied,* 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1973).

### Right to Comment Upon Waiver of Privilege Against Self-Incrimination

Prior to his opening statement, appellant's counsel informed the trial court he intended to state during opening and closing arguments that appellant would waive his constitutional privilege against self-incrimination and that his codefendant would not take the stand. The court forbade such comments stating that both direct comments or comments giving a direct inference as to a codefendant's decision to remain silent are forbidden. Appellant argues that the trial court should have allowed the comments or granted severance as requested and failure to do so was prejudicial, reversible error.

■ Appellant relies on *DeLuna v. United States,* 308 F.2d 140 (5th Cir. 1962) which held in a similar situation:

"If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately." 308 F.2d at 141.

The State points out, however, that the 5th Circuit later explained that such a duty arises only where "the defendants' defenses are based on mutually exclusive theories of guilt." *United States v. Nakaladski,* 481 F.2d 289, 302 (5th Cir. 1973); *accord, Gurleski v. United States,* 405 F.2d 253, (5th Cir.), *cert. denied,* 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969); *United States v. Kahn,* 381 F.2d 824 (7th Cir.), *cert. denied,* 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); *cf. Hayes v. United States,* 329 F.2d 209 (8th Cir.), *cert. denied,* 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964). The opinions on this issue sometimes fail to articulate clearly that there are two separate constitutional rights involved: one defendant's Fifth Amendment right to remain silent and the other defendant's Sixth Amendment right to counsel. A criminal defendant has an absolute right not to have his silence commented upon, even by counsel for co-defendant. A situation may arise, however, where if one defendant's defense theory is to be believed, the co-defendant's theory cannot be believed, for example when one defendant places sole blame on the other. If so, a defendant's constitutional right to counsel may require his counsel to comment on the other defendant's silence and compare it to the first defendant's willingness to take the stand. In such circumstances the two constitutional rights are in direct conflict and severance is required to protect the rights of each. Along with the other courts listed above, we believe such a circumstance arises only when the co-defendants' theories are mutually exclusive.

■ Appellant has made no showing that his defense theory was mutually exclusive of that of his co-defendant. Nor has he shown any prejudice which might be comparable. We find no abuse of discretion in the trial court's actions on this issue.

### Jurisdiction to Revoke Probation

■ Appellant was placed on probation for a previous conviction on December 21, 1973 for a period of two years and this probation ended on December 20, 1975. Although the petition to revoke probation was filed on August 11, 1975, appellant's probation was not in fact revoked until January 30, 1976 which was beyond the probation term.

Appellant argues that the trial court was without jurisdiction to revoke his probation and relies on A.R.S. § 13–1657 and a Court of Appeals, Division One, opinion interpreting this statute. *Keller v. Superior Court,* 22 Ariz.App. 122, 524 P.2d 956 (1974). The State, relying on the same decision, confesses error and joins appellant in requesting that the revocation and sentence imposed thereunder be reversed. We agree.

Judge Haire in *Keller v. Superior Court,* supra, presented a thorough and persuasive discussion of the very same issue that is before us now. The gist of the decision, based on previous decisions of this Court, was that A.R.S. § 13–1657 is the source of the court's subject matter jurisdiction and the power to revoke probation exists only during the term of probation. We hereby

**206**

adopt the reasoning of the Court of Appeals in *Keller.* The sentence in the parole revocation CR–77404 was not authorized by law and must be vacated.

*Conclusion*

For the foregoing reasons the judgment and sentence for armed robbery are affirmed. The probation revocation and sentence are vacated.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.