NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BETTE L. OFFRET, *Appellant.*

STATE OF ARIZONA, *Appellee,*

*v.*

TODD ERIC HINSON, *Appellant.*

No. 1 CA-CR 14-0275
No. 1 CA-CR 14-0284
(Consolidated)
FILED 8-13-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-000006-001
No. CR2013-000006-002
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Guy Brown PLLC, Phoenix
By Guy F. Brown
*Counsel for Appellants*

---

### MEMORANDUM DECISION

Judge Patricia A. Orozco, delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

**¶1** Bette L. Offret and Todd Eric Hinson (collectively Defendants), appeal from their convictions on one count of trafficking in stolen property in the second degree, a class 3 felony; one count of trafficking in stolen property in the first degree, a class 2 felony; and one count of theft of a means of transportation, a class 3 felony. Defendants argue that they are entitled to a new trial because: (1) the trial court erred in denying their motions for a mistrial and a new trial based on prosecutorial misconduct; (2) prosecutorial vouching; and (3) the trial court denied a continuance. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** In July 2011, Dan N. exited the Phoenix restaurant where he had just had dinner and discovered that his 1997 Chevrolet truck had been stolen. He immediately reported its theft to the Phoenix Police Department. On February 9, 2012, Phoenix Police undercover officers Chad Roettjer, Jeff Pluta, and Rafael Egea, received "a name and a telephone number" of an individual selling a stolen truck and made telephone contact with Hinson, who directed them to his location. When they arrived at the location in Sunnyslope, they saw Hinson and Offret "stripping" a white 1997 Chevrolet truck. Hinson was in the bed of the truck, removing a tool box, and Offret was inside the truck cab where an "egg crate" replaced the driver's seat. Defendants had neither the title nor keys to the vehicle and the steering column was cracked. After some negotiations, Pluta agreed with Offret to purchase the truck for $800. Pluta drove the truck to a police

---

[1] We view the evidence in the light most favorable to sustaining the convictions and resolve all reasonable inferences against defendants. *State v. Karr*, 221 Ariz. 319, 320, ¶ 2 (App. 2008).

2

storage facility, and police subsequently determined that it was Dan N.'s stolen truck.

¶3            A few weeks later, Defendants contacted Pluta and informed him that they had located a trailer and "would have to go grab it or get it . . . and needed to borrow a truck in order to pick it up." On February 21, after receiving a call from Defendants, Roettjer, Pluta, and Egea returned to the Sunnyslope location where they observed the two Defendants working in their driveway where a large, flatbed, trailer was parked. Hinson proceeded to remove an Arizona title and a VIN tag from his left breast pocket, which he gave to Pluta.[2] Hinson told Pluta that "[the title and VIN tag] were clean" and were "included in the price of the trailer" and that he also would be willing to grind off the serial number. Pluta negotiated with Offret and purchased the trailer for $500. The trailer was also taken to a police storage facility, and police later determined that it had been stolen in February 2012.

¶4            In January 2013, the State charged Defendants with Count 1, trafficking in stolen property in the second degree (truck); Count 2, knowingly trafficking in stolen property in the first degree (trailer); and theft of a means of transportation (trailer) knowing or having reason to know the property was stolen. Defendants were tried together, and Offret testified at trial. She maintained that she and Hinson had bought the truck and trailer from third parties in good faith and had no inkling that either vehicle was stolen. A jury found Defendants guilty of the offenses as charged. The trial court sentenced Hinson to concurrent prison terms of ten, fourteen and ten years respectively as to counts 1-3.[3]     Offret was sentenced to concurrent prison terms of two years each as to Counts 1 and 3 and three years as to Count 2. Defendants timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2015).[4]

---

[2]        The title bore neither Defendants' name but the name of a third party, T.B. T.B.'s signature transferring the title bore a date approximately two years prior to the date Defendants contacted Pluta and told him they had obtained a trailer for sale.

[3]        Hinson stipulated to four prior felony convictions.

[4]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

## DISCUSSION

I.      Denial of Motion for Mistrial/Motion for New Trial

¶5          Offret testified that she purchased the truck and trailer from two separate individuals neither of whom she could identify or locate. Offret testified that they purchased the truck in the parking lot of an apartment complex from an unknown male who asked $1000 for the truck. They paid him $400 for the truck, and he gave them the keys and allowed them to leave, with their promise that they would return the following day with the remaining $600.  He told them he would provide them with the title at that time.  When Offret and Hinson returned to the parking lot the next day, and several days thereafter, the seller was not there and no one at the apartment complex knew anything about him.  Offret testified that she and Hinson noticed the trailer parked at a house where the residents appeared to be moving while they were driving around neighborhoods looking for scrap metal.  The trailer had some scrap metal on it.   They approached the people at the house and a man told them that he would "let the trailer go" for $100 because he was moving and could not take it with him.  They purchased the trailer and all the scrap metal on it for that amount.  The trailer had no license plate, but the man gave them the title and VIN plate that they later gave to Pluta.

¶6          During cross examination, Offret confirmed that she had "no idea" who the person was who sold them the trailer.   The following exchange then occurred:

> [Prosecutor]:  And you can't ask him to come in here and testify for you?
>
> [Offret]:  No, I wished I could.
>
> Prosecutor:  Again, that didn't strike you as suspicious at all?
>
> [Offret]: No.

Two questions later, defense counsel asked to approach the bench and made an objection off the record.  The court suggested that counsel later put his objection on the record out of the presence of the jury.

¶7          At the next trial recess, which occurred at the conclusion of Offret's testimony, the court permitted defense counsel to "re-urge [his] objection and make a record."  Defense counsel argued that the prosecutor's questions to Offret concerning the fact that she did not know who sold her

the trailer and could not bring them to court to testify "violate[d] the burden of proof" which was "on the State, not on the defense." He requested a mistrial. The prosecutor contended that defense counsel had not made "a timely objection" and that the court could cure "whatever error the defense thinks there is" via a limiting instruction. The trial court opined that it was "a poorly worded question" but that "the topic was fair game." It denied the motion, finding that the question was not "prejudicial" and that the instructions that had been given and would be given clearly explained the burden of proof. The court also invited defense counsel to review the final instructions and suggest any additions to them or a limiting instruction counsel thought necessary. Despite this invitation, defense counsel did not propose a limiting instruction.

¶8        On appeal, Defendants argues that the prosecutor's question amounted to misconduct because it improperly shifted the burden of proof and the trial court abused its discretion when it denied the motion for mistrial on this basis.[5] We disagree.

¶9        "A declaration of a mistrial . . . is 'the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted.'" *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003) (citation omitted). Because the trial court is in the best position to assess the impact of a statement on the jury, we defer to the trial court's discretionary determination. *Id.* We will not overturn a trial court's decision to deny a motion for mistrial unless we find an abuse of discretion. *Id.*

¶10       The claim that the prosecutor's question improperly shifted the burden of proof is without merit. Our supreme court has long allowed prosecutors to discuss a defendant's failure to produce evidence so long as it does not constitute a comment on the defendant's failure to testify. *See, e.g., State ex. rel. McDougall v. Corcoran*, 153 Ariz. 157, 160 (1987) (prosecutor may properly comment on defendant's failure to present exculpatory evidence, as long as it does not constitute a comment on defendant's

---

[5]      The State argues that Defendants waived this argument by not specifically alleging "prosecutorial misconduct" in their objection at trial. Therefore, it contends that our review on appeal is limited to fundamental error. We disagree with the State. The obvious import of Defendants' objection was that the *prosecutor* here improperly shifted the burden of proof to Defendants, a claim of prosecutorial misconduct even if Defendants did not specifically name it as such. Defendants' objection simply pinpointed the nature of the misconduct for the trial court.

silence). In *State v. Lehr*, the court rejected a similar "burden shifting argument," by citing *McDougall*'s conclusion that "the inference that may be drawn from [the defendant's] failure to produce evidence—that the facts were unfavorable to him—is not unreasonable." 201 Ariz. 509, 522, ¶ 57 (2000) (citation omitted). Here the prosecutor's question clearly did not refer to either Hinson or Offret's decision to testify or not. It referred to Offret's testimony that she had no idea who had sold them either vehicle and therefore could not ask either seller to testify about the sale. The State's question merely sought to undermine Offret's contention that she trusted the sellers and did not find it "suspicious" that she did not know their identities. Given these circumstances, the trial court did not abuse its discretion in denying the motion for mistrial.

¶11        During his closing argument, defense counsel alluded to the prosecutor's question to Offret —"did you try and bring in the guy [to] court who sold you the trailer" — by referring to the question as a "no, no" to which he had objected. Defense counsel argued that it was "unfortunate [Defendants] trusted these two individuals and are paying for it now." He decried the prosecutor's "tactic" in asking the question, and reminded the jury that it was not Defendants' burden of proof.

¶12        During his rebuttal closing, the prosecutor agreed with defense counsel and reiterated that the State had the responsibility of producing evidence Defendants were guilty and the burden of proving that guilt beyond a reasonable doubt; that "the defense doesn't have to do anything;" and that "[t]hey don't have to prove they're innocent." The prosecutor argued:

> They don't have to prove reasonable doubt. They don't have to produce any witnesses.
>
> * * *
>
> *But what you need to think about is that they have the opportunity.* They don't have to. They have no burden at all. It's completely on the State to prove their case but *the defense has an opportunity to present witnesses.* (Emphasis added).

Defense counsel objected, and the trial court sustained the objection. Counsel then moved for a mistrial, and the court called a recess.

¶13        During the recess, the prosecutor argued that his comments were not shifting the burden of proof, and that ample case law permitted him to "comment[] on the defense's failure to produce evidence." The trial

court denied the motion for mistrial, stating, "I don't find there is any prejudice to the Defendants that cannot be cured by a curative instruction." When the jury returned, the trial court instructed them as follows:

> I just wanted to clarify and make sure that the jurors — just wanted to instruct you to disregard any comments by [the prosecutor] concerning [Defendants] having the opportunity to present evidence or witnesses in their defense and choosing not to.

> The burden of proof is on the State. They must prove each element as to each offense, as to each defendant, beyond a reasonable doubt with their evidence, and [Defendants] are under no obligation to present any evidence or call any witnesses whatsoever.

¶14　　　　Defendants claim on appeal that the prosecutor's comments that they had an "opportunity to present witnesses" also constituted misconduct because they shifted the burden of proof. As previously discussed, *see supra* ¶ 10, such comments are permissible and do not shift the burden of proof. *McDougall*, 153 Ariz. at 160; *Lehr*, 201 Ariz. at 522, ¶ 57. An exception to this rule applies, however, where it appears that only the defendant can explain or contradict the State's evidence. *State v. Bracy*, 145 Ariz. 520, 535 (1985). Here, that exception does not apply because the prosecutor's comment referred to other witnesses who possessed evidence that could have supported Defendants' rendition of events and not to either Defendants' testimony or lack thereof. Because the prosecutor's comments were permissible, the trial court did not abuse its discretion in denying the motion for mistrial based on the prosecutor's closing arguments.

¶15　　　　After the verdicts were in, Defendants filed a motion for new trial based on the same arguments regarding the prosecutor's impermissible burden shifting. The court held oral argument on the motion after which it denied the motion. Defendants argue on appeal that this was also an abuse of the court's discretion.

¶16　　　　The trial court denied the motion in a lengthy minute entry ruling that reviewed the applicable case law. The trial court specifically found that the questions to Offret "were not made with the intent to draw the jury's attention to [] Hinson's failure to testify," that they were within "a permissible area of inquiry," and, consequently, that "no burden shifting and no prosecutorial misconduct" occurred. The court further found that the jury here was fully instructed, through the preliminary and closing

instructions and by the court's curative instruction, that the State had the burden of proof and that the defense "was not required to produce any evidence of its own," which fully cured any potential for harm done by the prosecutor's comments. *See State v. White*, 115 Ariz. 199, 204 (1997).

**¶17**        "A denial of a motion for new trial will be reversed only when there is an affirmative showing that the trial court abused its discretion and acted arbitrarily." *State v. Mincey*, 141 Ariz. 425, 432 (1984). "An abuse of discretion occurs when 'the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice.'" *State v. Arvallo*, 232 Ariz. 200, 201, ¶ 7 (App. 2013) (internal citation and punctuation omitted). Again, as previously discussed, the trial court's finding that the prosecutor's comments were permissible and were not misconduct is supported by the record. Furthermore, the trial court correctly analyzed the applicable law. The trial court consequently did not abuse its discretion in also denying the motion for new trial.

II.        Prosecutorial Misconduct/Vouching

**¶18**        During closing argument, the prosecutor noted that the three officers may not all have remembered all the details, but that the ones they remembered were consistent. He argued that the jury should use its common sense when considering their memories and contradictory testimony: "What incentive do they have to mislead?"

**¶19**        During his closing argument, defense counsel made much of the fact that only Pluta had written the departmental reports in this case and that the reason that was so was because he was seeking appointment to the "Career Criminal Squad" and had to establish himself with his supervisors, "so those reports better all line up." He called into question the other two officers' memory of events and the fact that they purported to recall things that were not in Pluta's reports and that some of their memories were also contradictory. Defense counsel also pointed out that the State had no photos of either vehicle to document the officers' descriptions of the vehicles' physical condition and that Pluta testified that he had a recording device but could not use it to record any of the incriminating statements he alleged Defendants had made during their negotiations because it malfunctioned. Counsel argued, "it's convenient that the audio didn't work because if it did work, well, then you guys would all be able to listen to it and you would know exactly what was said during that time[,] [b]ut it didn't work."

¶20 Consequently, defense counsel argued, "What you have is an officer who is incentivized to have his reports read glowingly, because he's going to have to answer questions about this from supervisor." He also argued:

> We wouldn't be here if the officers did a proper job. And what I mean by that, this person is a trained professional. He has no interest in the case. If he has no interest, what is he doing sitting here? What is the detective, the case agent, doing sitting here if he has no interest in the case? Trust me. The police have an interest in the case. Trust me. Okay?

¶21 In rebuttal closing, the State argued :

> Ladies and gentlemen, this case really comes down to one thing. Who do you believe? Do you believe the three veteran officers, detectives, or do you believe Ms. Offret? Because … if you believe Ms. Offret, and you want to believe the testimony, you want to find the [D]efendants not guilty, find there's a reasonable doubt.
>
> The only way to get to that point is to conclude that Detective Egea, Detective Roettjer and Officer Pluta were lying. That they purposefully, intentionally, maliciously put in their reports and testified about statements [] that [Defendants] made, that they knew that they never made. So do you think that they did that?
>
> Because you can all realize what that would mean for those officers. If something like that was discovered, it's fair to assume that they would be fired. They'd never work as a police officer again. Potential liability, civil and criminally. So is that what you think happened, or do you think the officers are telling the truth?
>
> The officers are telling the truth. The evidence supports that they're telling the truth. The evidence supports that both [D]efendants [] are guilty of all three charges in this matter. And I ask you to find them all guilty.

¶22 Defendants did not object to these statements at trial. On appeal, Defendants maintain that the prosecutor engaged in "vouching for police testimony" and the misconduct entitles them to a new trial. Because Defendants did not raise this argument before the trial court, they have

forfeited the right to appellate relief on this issue unless they can establish both that fundamental error exists and that it caused them prejudice in their case. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005). Fundamental error is "error going to the foundation of the case, error that that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id*. at ¶ 19 (citation omitted). Furthermore, defendants must affirmatively prove prejudice. *State v. Lowery*, 230 Ariz. 536, 540, ¶ 9 (App. 2012).

¶23 Impermissible vouching exists: (1) when the prosecutor places the prestige of the government behind its witnesses, and (2) when the prosecutor suggests that information not presented to the jury supports the witness's testimony. *State v. Doerr*, 193 Ariz. 56, 62, ¶ 24 (1998) (citation omitted). The first type consists of personal assurances of a witness's truthfulness; the second consists of remarks that bolster a witness's credibility by references to matters outside the record. *State v. Dunlap*, 187 Ariz. 441, 462 (App. 1996) (citation omitted). Defendants maintain that the prosecutor in this case committed both forms of impermissible vouching. They argue that the prosecutor placed the prestige of the government behind the officers when he stated, "The officers are telling the truth," and that he alluded to matters outside the record to further bolster their credibility when he stated that "they would be fired" and face "civil and criminal" liability if they lied in their reports or testimony.

¶24 "Wide latitude is given in closing arguments and counsel may comment on the evidence and argue all reasonable inferences therefrom." *State v. Amaya-Ruiz*, 166 Ariz. 152, 171 (1990) (citation omitted). When a prosecutor's characterization of a witness as truthful is "sufficiently linked to the evidence," it has not been deemed to be vouching, even if, out of context, it might be interpreted as such. *State v. Corona*, 188 Ariz. 85, 91 (App. 1997). *See also, State v. Lee*, 185 Ariz. 549, 554 (1996) ("she's been, I think, honest" and "I think he was an honest man" not improper vouching viewed in context of overall closing argument).

¶25 The prosecutor's statements here range from the unwise to the improper, but, given their context, none are ultimately so prejudicial or so improper that they constitute fundamental error requiring reversal. The prosecutor was not giving personal assurances of the officers' veracity or suggesting that information outside the record supported their testimony. He was instead addressing defense counsel's arguments suggesting improper motives and reasons for the officers' rendition of events and asking the jurors to weigh those arguments against Offret's rendition and

the evidence at trial. The prosecutor prefaced his comments by reminding the jurors that it all came down to who they believed. Although the choice of wording may have been unfortunate and should more prudently be avoided in future, it is clear that the statements were nonetheless aimed at addressing the inconsistences in the testimony and not at suggesting that the prosecutor had any special knowledge of the truthfulness of the officers. As such, they were within the latitude afforded counsel in closing argument. Defendants therefore fail to establish any prosecutorial misconduct.

¶26 Furthermore, even assuming error, Defendants have not shown actual prejudice. The trial court instructed the jury that counsel's argument was not evidence and that the officers' testimony was not to be granted any greater or lesser importance or believability "merely because of the fact that the witness [was] a law enforcement officer." We presume that the jury followed the instructions, *State v. Velazquez*, 216 Ariz. 300, 312 ¶ 50 (2007), and Defendants have presented nothing that negates that presumption. On this record, we find no reversible error.

III.    Denial of Continuance

¶27 During cross-examination, Pluta testified that the truck and the trailer were eventually recovered "at the same time" by Shamrock Towing and towed from a "secured federal building" in the area of I-17 and Greenway. After the State rested, defense counsel requested a continuance to allow the defense to secure the testimony of a Shamrock Towing representative as a rebuttal witness. According to defense counsel, Shamrock had no record of the truck being towed, only the trailer, and the witness was necessary to impeach Pluta. The testimony would "[g]o [to] the testimony about the report, the report writing and that being used to determine credibility as well as memory." The trial court granted defense counsel's request.

¶28 The following morning, defense counsel reported that Shamrock Towing had gone out of business in December 2013 and that it would take "two to three weeks" to obtain certified copies of any "full-fledged records" about the vehicles towed. In the meanwhile, a defense investigator had obtained a "screen shot" of a towing record that showed that the truck was towed "from a different location than what [Pluta] had testified." Because of the late disclosure and the fact that the information was not authenticated, the State refused to stipulate to admission of the screen shot and, despite repeated entreaties by the trial court, the parties could not agree to a stipulation that satisfied all sides. Defense counsel

conceded, absent a stipulation, the screen shot was not admissible under the rules of evidence. Counsel asked for "leave of about three weeks in order to get these documents and bring in the person who is able to identify them as business records back from Texas."

¶29        The trial court precluded the admission of the screen shot, "not as a discovery violation," but because it was not admissible under the rules of evidence as there was "no custodian of records . . . available today to . . . lay the foundation" for its admissibility. On appeal, defendants argue that the trial court's failure to grant them the continuance or admit the screen shot denied them their right to confront witnesses. Defendants did not raise this argument before the trial court and have waived the right to relief on this issue unless they can prove that fundamental error exists. *See State v. Hamilton*, 177 Ariz. 403, 408 (App. 1993) ("A party must make a specific and timely objection at trial to the admission of certain evidence in order to preserve the issue for appeal.") Furthermore, an objection to an admission of evidence on one ground does not preserve issues relating to its admission on other grounds. *Id.* Because waiver applies to untimely objections on constitutional grounds as well, *see State v. Spreitz*, 190 Ariz. 129, 145 (1997), we therefore decline to consider Defendants' constitutional claim.

¶30        Insofar as Defendants claim that the trial court erred in not granting the continuance or admitting the screen shot are concerned, we find no reversible error. We will not overturn a trial court's decision to admit or exclude evidence absent an abuse of discretion. *State v. Murray*, 162 Ariz. 211, 214 (App. 1989). Granting a continuance is also left to the sound discretion of the trial court, and we will not disturb the trial court's ruling on the motion unless we find a clear abuse of discretion and that prejudice resulted. *State v. Amarillas*, 141 Ariz. 620, 622 (1984).

¶31        First, as Defendants conceded at trial, the "screen shot" was not admissible under the Arizona Rules of Evidence as it was neither a certified nor self-authenticating document. *See* Ariz. R. Evid. 901, 902. Therefore, the trial court did abuse its discretion in finding that it was inadmissible on this basis. Nor did the court abuse its discretion in denying the motion to continue the trial proceedings for two to three weeks in order to permit defendants to secure certified copies of the towing documents or a witness who could testify to the towing record. A trial court should grant a continuance in the middle of a trial only under the most exigent of circumstances. *State v. Blodgette*, 121 Ariz. 392, 395 (1979).

¶**32**       Defendants contend that the records were essential to impeaching Pluta's reports and the officers' testimony and memory of events.   However, the trial court noted, "I don't know that a tow record, you know, the day after really accomplishes a whole lot."  We agree.  At best, any inaccuracy concerning whether the two vehicle were towed together or not was a collateral one and had little bearing in whether or not they were stolen.  Furthermore, the record shows that Defendants were more than able to impeach Pluta and the other officers by pointing to statements or events that were testified to but not documented in Pluta's reports and to inconsistencies in the officers' testimony.   Under these circumstances and finding no evidence of prejudice to Defendants, we find the trial court did not abuse its discretion in denying the continuance and precluding the evidence.

**CONCLUSION**

¶**33**       For the foregoing reasons, we affirm Defendants' convictions and sentences.



Ruth A. Willingham · **Clerk of the Court**
F I L E D : RT