NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STACY LEE SATZMAN, *Appellant.*

No. 1 CA-CR 16-0861
FILED 12-7-2017

Appeal from the Superior Court in La Paz County
No. S1500CR201400278
The Honorable Samuel E. Vederman, Judge, Retired

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By David A. Sullivan
*Counsel for Appellee*

Craig Williams Attorney at Law, PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1        Stacy Lee Satzman appeals his conviction and sentence imposed after a jury found him guilty of one count of arson of a structure. He argues that during jury selection, the superior court abused its discretion by failing to excuse biased potential jurors for cause and by not dismissing the entire jury pool, thereby depriving him of a fair trial. He also argues the court erred by failing to adequately instruct the jury on its ability to ask questions of witnesses over the course of the trial. We disagree and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The State charged Satzman with one count of arson of a structure, a class 4 felony, and one count of misconduct involving weapons, by knowingly possessing a prohibited weapon, a class 4 felony. After a trial, a jury convicted Satzman of arson of a structure but acquitted him of misconduct involving weapons. The jury then determined the State had proven the existence of two aggravating circumstances. At sentencing, the trial court found the State had met its burden of proof on four prior felony convictions and sentenced Satzman to a partially aggravated 12-year sentence.

## DISCUSSION

### I.        Excusing "Clearly Biased Jurors"

¶3        Rule 18.4(b) of the Arizona Rules of Criminal Procedure provides that potential jurors shall be excused when there is a "reasonable ground to believe that a juror cannot render a fair and impartial verdict." However, a potential juror having "preconceived notions or opinions does not necessarily render him incompetent to fairly and impartially decide a case"; if a juror is willing to "put aside his opinions and base his decision solely upon the evidence, he may serve." *State v. Poland*, 144 Ariz. 388, 398 (1985) (citations omitted). A court may rehabilitate a juror during voir dire by convincing the juror of the juror's responsibility to sit impartially. *Id*. In

evaluating potential jurors' fairness and impartiality, "the trial court has the best opportunity to observe potential jurors and thereby judge their credibility." *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37 (2000) (citations omitted). We review a trial court's decisions on whether to strike jurors for cause for an abuse of discretion. *State v. Glassel*, 211 Ariz. 33, 47, ¶ 46 (2005).

¶4        At the close of jury selection, when the superior court asked Satzman if he passed the 23 selected potential jurors for cause, Satzman objected to potential jurors L.S., E.R., C.C., and C.S. Of these, the court later excused C.S. for cause. Satzman objected to L.S., E.R., and C.C. because of their responses to the superior court's question: "How many of you believe that the Defendant should put on some evidence to support his innocence?" L.S., C.C., and E.R. all indicated they did believe Defendant should put on some evidence, but the court followed up by asking:

> If all of you were told that the law does not require that, that the Defendant has to present no evidence, would you follow the law? . . . I need to see—*is there anyone who disagrees with that?* In other words, the Defendant does not need to testify, doesn't have to present any evidence, that he's not required to do any of that. If you're told that, can you follow the law?

(Emphasis added.) All of the jurors responded affirmatively together, and the court determined that "[t]hey've all said that they can follow the law." The court then invited Satzman to ask any follow up questions he would like to, but he elected to "leave it at that." Later, before passing the jury, Satzman objected to L.S., E.R., and C.C.[1] as not adequately rehabilitated. The court, however, noted that it had directed each of these jurors on the correct law and therefore denied each objection.

¶5        Satzman argues that L.S., E.R., and C.C. should have been dismissed for cause because each indicated they felt the defendant should offer some proof of his innocence. We disagree. The superior court asked the appropriate follow-up questions, providing an opportunity for "anyone who disagrees with that" to speak up, and determined these three prospective jurors had all indicated they could follow the law. The court

---

[1] Satzman further objected to potential juror C.C. because "she seems to be not really paying attention," had "suffered some issue with her stomach in the last week or so," and had "been jittery at least most of the afternoon." The court had not noticed any jittery behavior from her and noted she indicated that she would attempt to sit through trial, and therefore denied Satzman's objection on this basis as well.

invited Satzman to pursue the issue further, but he declined to take that opportunity. Based on this record, each juror committed to following the law as the court instructed. Nothing more was required. Because the superior court is in the best position to judge the credibility, fairness, and impartiality of potential jurors, and because the record contains no information challenging the jurors' rehabilitation, the court did not abuse its discretion by refusing to dismiss L.S., E.R., and C.C. for cause.

## II. Excusing the Entire Jury Pool

¶6  A defendant is entitled to be tried by a fair and impartial jury, but "is not entitled to any one particular jury." *State v. Lujan*, 184 Ariz. 556, 560 (App. 1995) (citation omitted). "The trial court must be affirmed unless the record affirmatively shows that such a fair and impartial jury was not secured." *Id.* (citation omitted). When a defendant fails to object to alleged trial error, we apply fundamental-error review. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Fundamental error is error that goes to the foundation of the case, takes from the defendant a right essential to his or her defense, and is of such magnitude that the defendant could not have received a fair trial. *Id.* To prevail under fundamental-error review, the defendant has the burden of persuasion to establish both that fundamental error occurred and that the error in the case caused the defendant prejudice. *Id.* at 567, ¶ 20.

¶7  Satzman argues the court's failure to dismiss the entire jury pool deprived him of an impartial jury and therefore a fair trial. Satzman points to a number of statements made by various potential jurors during the selection process, claiming "[t]he whole process was messy and prejudicial to the [a]ppellant." He claims these events were exacerbated by the fact that only approximately 59 of the 140 summoned jurors appeared for selection, which made the court unwilling to dismiss "tainted and questionable potential jurors." Because Satzman did not move for a mistrial or ask to start over with a new venire, we review only for fundamental, prejudicial error. *Id.* at 567, ¶ 19.

¶8  First, Satzman points to statements made by three potential jurors he claims prejudiced the entire jury pool. In the presence of the jury pool, potential juror W.A.P. told the court: "I currently work in law enforcement. I . . . arrested Mr. Satzman several years ago. I don't believe it will be an issue." W.A.P. was excused for cause. Potential juror G.E. told the court, "I . . . know Mr. Satzman, as I served medical [sic] at the county jail and in the community. . . . I think because of some of the information that I obtained . . . I feel I would, you know, be prejudiced in terms of having

information that I do know." G.E. was excused for cause. Potential juror T.P. told the court, "I have a court case tomorrow here in Superior Court . . . and I know [the defendant] personally." T.P. was excused for cause. Despite the dismissal of all three of these potential jurors, Satzman claims that together, these statements prejudiced the jury pool because "potential jurors knew that the [a]ppellant had prior arrests, spent time in jail, and was friendly with 'other criminals.'"

¶9 Satzman has not established, however, that these statements inappropriately tainted the entire jury pool and deprived him of a fair and impartial jury. *See State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶ 18 (App. 2008) (absent argument or authority that the alleged error is fundamental, a defendant cannot sustain his or her burden to show fundamental error resulting in prejudice); *State v. Doerr*, 193 Ariz. 56, 61–62, ¶ 18 (1998) (juror prejudice will not be presumed but must be demonstrated by objective evidence). Neither W.A.P.'s nor G.E.'s statements revealed whether Satzman had ever been convicted of any crime or anything about the nature of the past arrest or the reason for his jail time. Contrary to Satzman's implication, T.P.'s statement that "I have a court case tomorrow here" bore no relation to her statement that "I know [the defendant] personally."

¶10 Similarly, Satzman points to an exchange between two potential jurors that he again claims caused him prejudice. Out of the presence of the rest of the jury pool, potential juror W.L.P. informed the court that another juror—later identified as G.G.—had "turned to me and mentioned that the Defendant was a bad man, a really bad man." W.L.P. was dismissed for cause. Later, the court asked the entire jury pool, "At any point today has anyone heard anyone make a negative comment about the Defendant?" No hands were raised. The court then asked, "Is there anyone in this room currently, any prospective juror, or anyone else who can recall making a negative comment about the Defendant today out loud?" At that point, juror G.G. indicated that she had made a negative comment but did not repeat its contents, and the court dismissed her for cause. In his brief, Satzman wonders, "If [p]otential juror [W.L.P.] heard this conversation who else heard that the [a]ppellant was a really bad man?"

¶11 Here too, Satzman has not established that the W.L.P.-G.G. interaction so prejudiced the entire jury pool as to necessitate its dismissal to ensure a fair and impartial jury. Neither W.L.P. nor G.G. ultimately served on the jury. The court specifically asked the jury pool about hearing negative comments about the defendant, and no other juror even alluded to G.G.'s comments. Regardless of Satzman's speculation about the interaction prejudicing the entire jury pool, the court addressed the issue,

removed the jurors involved, and moved on with selection. The court therefore took the necessary affirmative steps to remedy any possible prejudicial effects on the jury pool.

¶12        Satzman also suggests he was prejudiced by apparently negative comments potential juror S.B. overheard from potential juror D.E.S., who was later dismissed for cause. S.B. did not hear the content of D.E.S.'s comments, but only heard potential juror D.L.S. respond, "there's two sides to every story." S.B. assured the court that what she had overheard did not affect her ability to be fair and impartial. D.L.S. later clarified that D.E.S. had said "something about they'd already decided, or something," but that she "really wasn't paying attention" and had only responded, "[y]ou have to hear both sides of the story." Satzman's rhetorical argument regarding this episode—"Who else heard this conversation?"—is speculation that fails to establish actual prejudice. The offending juror did not ultimately serve on the jury, and the two jurors who said they heard D.E.S.'s comments made statements indicating that they did not attribute any weight to them. Again, the trial court took the appropriate actions to cure any potential prejudice.

¶13        Satzman has "ask[ed] this court to indulge in . . . assumption[s] . . . that the panel was tainted," and we decline to do so. *See State v. Davis*, 137 Ariz. 551, 558 (1983). Satzman has failed to meet his burden of showing that any of the above statements irreparably and negatively prejudiced the entire jury pool against him to warrant its *sua sponte* dismissal by the superior court.

### III.    Instructing the Jury on Its Ability to Ask Questions of Witnesses

¶14        Rule 18.6(e) of the Arizona Rules of Criminal Procedure provides:

> Jurors shall be instructed that they are permitted to submit to the court written questions directed to witnesses or to the court; and that opportunity will be given to counsel to object to such questions out of the presence of the jury. Notwithstanding the foregoing, for good cause the court may prohibit or limit the submission of questions to witnesses.

The comment to this rule further explains how the superior court should instruct the jury on submitting questions: that "any questions directed to witnesses or the court must be in writing, unsigned and given to the bailiff," and that jurors should hand questions "to the bailiff during a recess, or if

the witness is about to leave the witness stand, the juror should signal to the bailiff." *Id*. cmt. 18.6(e) (1995 Amendment).

¶15 During Satzman's trial, the superior court gave the jury a preliminary instruction about its ability to ask questions of witnesses:

> If you have a question about the case for a witness or for me, write it down, but do not sign it. Hand the question to the [b]ailiff. If your question is for a witness who is about to leave the witness stand, please signal the [b]ailiff or me before the witness leaves the stand. The lawyers and I will discuss the question.

Satzman argues the court's instruction, given at the outset of the trial, did not adequately comply with Rule 18.6(e). He posits that the superior court was required to remind the jury of its ability to ask questions at the conclusion of each witnesses' testimony, and that its failure to do so deprived him of the opportunity to "address the jury's issues."

¶16 Contrary to Satzman's assertion that "the jury was not instructed when and how to have their questions addressed," the trial court's instruction fully comported with both the mandate of the rule and the guidance of its comment. *See State v. Aguilar*, 209 Ariz. 40, 48, ¶ 26 (2004) ("Although a comment may clarify a rule's ambiguous language, a comment cannot otherwise alter the clear text of a rule."). The trial court instructed the jurors on both when ("If your question is for a witness who is about to leave the stand, please signal the bailiff or me before the witness leaves the stand.") and how ("Write it down. Do not sign your name. Hand the question to the bailiff.") to submit questions for witnesses. There is no requirement that the trial court remind the jury of its ability to ask questions throughout trial, and we decline to institute one here.

¶17 Furthermore, Satzman did not object to the superior court's allegedly insufficient instruction and subsequent failure to prompt the jury for questions, and thus we review only for fundamental error that led to prejudice. Five total witnesses testified during trial. At the conclusion of the first witness, the State specifically asked if there were any juror questions, to which the bailiff replied no. At the conclusion of both the third and fourth witnesses, a juror submitted a question for the witness without any prompting from the court. Contrary to Satzman's speculation, the proceedings do not indicate that the jury was "chill[ed]" by a perception that jury questions are "an inconvenience or an interruption," and that he

was therefore not able to "address the jury's issues." Accordingly, Satzman has not shown any error.

## CONCLUSION

**¶18**　　　Because Satzman has shown neither an abuse of discretion nor fundamental error resulting in prejudice, his conviction and resulting sentence is affirmed.